**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PHILIP HANSTEN,<br>Plaintiff,<br>v.<br>DRUG ENFORCEMENT<br>ADMINISTRATION,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:21-cv-2043 |

## PLAINTIFF PHILIP HANSTEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire  (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com

*Attorneys for Plaintiff Professor Philip Hansten*

Dated: October 22, 2021

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  BACKGROUND ...................................................................................................... 2

    A.  The Parties to this Litigation .......................................................................... 2

        1.  Plaintiff Professor Philip Hansten.................................................... 2

        2.  Defendant DEA.................................................................................. 3

    B.  Relevant Factual Background .......................................................................... 3

        1.  DEA Form 222 ................................................................................. 3

        2.  Professor Hansten's Areas of Research ........................................... 4

        3.  Professor Hansten's FOIA Request and Complaint.......................... 5

        4.  DEA's Response and Answer to the Complaint ............................... 6

III.  STANDARD OF REVIEW ....................................................................................... 7

IV.  ARGUMENT ............................................................................................................ 8

    A.  The Purposes of FOIA ..................................................................................... 8

    B.  Exemption 7(E) Does Not Apply to the Requested Information ...................... 10

        1.  Exemption 7(E) Does Not Apply Because the Requested
            Information was Compiled for Record Keeping Purposes ...................... 11

        2.  Exemption 7(E) Does Not Apply Because the Requested
            Information Applies to Authorized DEA Registrants.............................. 14

        3.  Exemption 7(E) Does Not Apply Because the Requested
            Information Does Not Disclose Techniques, Procedures or
            Guidelines which Pose a Risk of Circumvention of the Law .................. 14

    C.  DEA's "Categorical" Refusal to Search for Documents under Exemption
        7(E) is Improper ............................................................................................. 17

        1.  DEA Should be Required to Search for Responsive Documents
            and Prepare a *Vaughn* Index ................................................................... 17

        2.  DEA Should be Required to Justify Fully its Denial of Access .............. 18

    D.  DEA's Denial Must Be Scrutinized In Light of Prior Disclosures ...................... 20

V.  CONCLUSION.......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. U.S. Dep't of Justice,*
    880 F.3d 473 (9th Cir. 2018) ................................................................10

*Advancement Project v. U.S. Dep't of Homeland Sec.,*
    No. 19-52, 2021 WL 3036723 (D.D.C. July 19, 2021) ........................18

*Albuquerque Pub. Co. v. U.S. Dep't of Justice,*
    726 F. Supp. 851 (D.D.C. 1989) ..........................................................15

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.,*
    950 F. Supp. 2d 221 (D.D.C. 2013) ...............................................17, 18

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.,*
    30 F. Supp. 3d 67 (D.D.C. 2014) ....................................................15, 16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...............................................................................7

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.,*
    836 F.3d 987 (9th Cir. 2016) (en banc) ...............................................9, 17

*Boyd v. Criminal Division of U.S. Dep't of Justice,*
    475 F.3d 381 (D.C. Cir. 2007) ..............................................................10

*Braun v. U.S. Postal Serv.,*
    317 F. Supp. 3d 540 (D.D.C. 2018), *appeal filed* (D.C. Cir. July 27, 2018) ...........................8

*Bristol-Myers Co. v. FTC,*
    424 F.2d 935 (D.C. Cir. 1970) ..............................................................12

*Burke v. Gould,*
    286 F.3d 513 (D.C. Cir. 2002) ................................................................7

*C.R.E.W. v. Dep't of Justice,*
    746 F.3d 1082 (D.C. Cir. 2014) ............................................................10

*Campbell v. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ................................................................12

*Citizens for Resp. & Ethics in Washington v. Gen. Servs. Admin.,*
    No. CV 18-2071 (CKK), 2021 WL 765659 (D.D.C. Feb. 26, 2021) ................10, 19

*Connell v. United States S. Command*,
   No. CV 18-1813 (RDM), 2020 WL 6287467 (D.D.C. Oct. 27, 2020)....................................8

*Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice*,
   331 F.3d 918 (D.C. Cir. 2003) ...........................................................................12

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) .......................................................................8

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976)........................................................................................10

*Elec. Privacy Info. Ctr. v. Customs & Border Prot.*,
   160 F. Supp. 3d 354 (D.D.C. 2016) ..........................................................8, 10, 15

*Halpern v. FBI*,
   181 F.3d 279 (2d Cir. 1999)...........................................................................9, 17

*Heartland Alliance for Human Needs & Human Rights v. ICE*,
   406 F. Supp. 3d 90 (D.D.C. 2019) ...............................................................18, 19

*Jefferson v. Dep't of Justice*,
   284 F.3d 172 (D.C. Cir. 2002) ..........................................................................11

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989)..........................................................................................1

*King v. U.S. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987) .......................................................................8, 10

*Ludlam v. U.S. Peace Corps*,
   934 F. Supp. 2d 174 (D.D.C. 2013) ....................................................................9

*Mehl v. U.S. EPA*,
   797 F. Supp. 43 (D.D.C. 1992) .........................................................................20

*Mobil Oil Corp. v. EPA*,
   879 F.2d 698 (9th Cir. 1989) ............................................................................20

*Nat'l Sec. Archive v. FBI*,
   759 F. Supp. 872 (D.D.C. 1991) .......................................................................15

*NLRB v. Robbins Tire & Rubber Co.*,
   437 U.S. 214 (1978)..........................................................................................1

*Ortiz v. U.S. Dep't of Justice*,
   67 F. Supp. 3d 109 (D.D.C. 2014) ......................................................................8

*Pratt v. Webster*,
  673 F.2d 408 (D.C. Cir. 1982) ...................................................................................12, 13

*Prop. of the People, Inc. v. Dep't of Justice.*,
  No. CV 17-1193 (JEB), 2021 WL 3052033 (D.D.C. July 20, 2021) ....................................20

*Pub. Citizen Health Research Grp. v. Food & Drug Admin.*,
  185 F.3d 898 (D.C. Cir. 1999) .................................................................................................7

*Pub. Empls. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
  740 F.3d 195 (D.C. Cir. 2014) .........................................................................11, 12, 14

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ...............................................................................................8

*Shannahan v. IRS*,
  672 F.3d 1142 (9th Cir. 2012) ..................................................................................................9

*Shays v. Fed. Election Comm'n*,
  424 F. Supp. 2d 100 (D.D.C. 2006) .........................................................................................8

*Students Against Genocide v. Dep't of State*,
  257 F.3d 828 (D.C. Cir. 2001) ..................................................................................................9

*Tax Analysts v. IRS*,
  294 F.3d 71 (D.C. Cir. 2002) ..................................................................................................12

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ..............................................................................................................8, 9

*Villanueva v. U.S. Dep't of Justice*,
  2021 WL 4342004 (Aug. 12, 2021) .......................................................................................18

*Waldner v. U.S. Dep't of Justice*,
  981 F. Supp. 2d 14 (D.D.C. 2013), *aff'd*, 13 CV 5350, 2014 WL 3014045
  (D.C. Cir. 2014) .......................................................................................................................7

*Whittaker v. U.S. Dep't of Justice*,
  Case No. 18-cv-01434, 2019 WL 2569915 (D.D.C. June 21, 2019)......................................15

**Statutes**

5 U.S.C. § 552(a)(4)(A)(iii) .........................................................................................................9

5 U.S.C. § 552(b)(7)(E) .......................................................................................................10, 14

5 U.S.C. § 555(a)(6)(C) ...............................................................................................................7

Freedom of Information Act ................................................................................ *passim*

U.S. Dep't of Justice, Guide to the Freedom of Information Act 648 (2009) ..............................15

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................................7

**Regulations**

21 C.F.R. § 1305.01 *et seq.*...............................................................................................15

21 C.F.R. § 1305.03 ............................................................................................................3

21 C.F.R. § 1305.04 ........................................................................................................3, 16

21 C.F.R. § 1305.11 ................................................................................................. *passim*

Plaintiff Professor Philip Hansten ("Professor Hansten") states the following in support of his Motion for Summary Judgment:

I.  **PRELIMINARY STATEMENT**

By denying production of the information Professor Hansten requested under the Freedom of Information Act ("FOIA"), defendant Drug Enforcement Administration ("DEA") seeks to create for itself a legal "black hole" from which all records, no matter how tenuously connected to law enforcement, disappear forever from public scrutiny.

FOIA provides a balance between the right of the public to obtain agency records in order to "hold the governors accountable to the governed," *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), and the need of the Government to protect certain information from disclosure, *see John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989).  This balance is expressed in the nine specific exemptions from production contained in the statute.

Here, DEA relies only on Exemption 7(E) to deny production of the requested information on the alleged ground that it "concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions."  *See* Declaration of Professor Hansten ("Hansten Decl."), attached hereto as **Exhibit 1**, at ¶ 14 and Ex. E.  DEA claims Exemption 7(E) creates a categorical exemption from disclosure of the requested information and it need not even conduct a search for the requested documents nor provide a *Vaughn* Index of the documents claimed to be exempt from production.  Further, DEA argues it can even withhold from requesters and the Court the information needed to identify whether the requested documents exist and whether their exemption from production, in whole or in part, is legally justifiable.  DEA has not met its burden of establishing a justification for such a broad exclusion from FOIA, nor can it because it does not exist.

Moreover, Exemption 7(E) does not apply to the information Professor Hansten has requested: information about DEA registrants who were issued DEA Form 222 -- the order form for Schedule I and II controlled substances -- on a specific date.  DEA maintains a database of registrants permitted to handle these substances, and issues DEA Forms 222 to these registrants. DEA has not demonstrated how some secret law enforcement information is being disclosed by releasing the information Professor Hansten requests; it is public knowledge that accredited purchasers must complete a DEA Form 222 to order legally Schedule I and II controlled substances.  DEA has mandated this process by regulations published in the Federal Register and Code of Federal Regulations ("C.F.R.").  The information Professor Hansten has requested does not reveal techniques, procedures, or guidelines for law enforcement investigations or prosecutions not otherwise widely known and the requested production under FOIA would pose no risk of circumvention of the law.  Furthermore, the Court should question DEA's current claim of a categorical exemption for this information in light of the fact that DEA has previously released the same type of information that Professor Hansten now requests.

Exemption 7(E) is inapplicable to Professor Hansten's request, and the Court should order DEA to search for and produce the requested information.

## II.     **BACKGROUND**

### A.     **The Parties to this Litigation**

#### 1.     **Plaintiff Professor Philip Hansten**

Professor Hansten is a Professor Emeritus at the School of Pharmacy at the University of Washington.  *See* Ex. 1, Hansten Decl. ¶ 3; Complaint, ECF No. 1, ¶ 2.  Professor Hansten has taught pharmaceutical courses discussing drug interactions at the University of California in San Francisco.  Ex. 1, Hansten Decl. ¶ 3; Complaint, ECF No. 1, ¶ 2.  He also performs research involving drug interactions and has authored multiple books on drug interactions, which have sold

over one million copies since 1971.  Ex. 1, Hansten Decl. ¶ 4, 7; Complaint, ECF No. 1, ¶ 2. Professor Hansten has lectured widely in North America, Europe, and Asia, including in Latin America and the Middle East and was on the Advisory Board and a Contributing Editor to "The Medical Letter" for many years.  Ex. 1, Hansten Decl. ¶ 5, 6; Complaint, ECF No. 1, ¶ 2.  He is currently working on a federal Agency for Healthcare Research and Quality ("AHRQ") grant involving research on drug interactions.  Ex. 1, Hansten Decl. ¶ 7.

### 2. Defendant DEA

DEA is a federal agency within the United States Department of Justice subject to FOIA. *See* Answer to Complaint, ECF No. 6, at ¶ 3.  Its publicly stated mission is "to prevent, detect, and investigate the diversion of controlled pharmaceuticals and listed chemicals from legitimate sources while ensuring an adequate and uninterrupted supply for legitimate medical, commercial, and scientific needs."  *See* DEA Program Description, attached hereto as **Exhibit 2**, *https://www.deadiversion.usdoj.gov/prog_dscrpt/index.html*.

### B. Relevant Factual Background

### 1. DEA Form 222

DEA Form 222 is the required form "for each distribution of a Schedule I or II controlled substance." 21 C.F.R. § 1305.03.  Acquirers of controlled substances use DEA Form 222 to record their purchases.  21 C.F.R. § 1305.04.  Presumably, all entities or persons using DEA Form 222 do so legitimately: "Only persons who are registered with DEA under section 303 of the [Controlled Substances] Act (21 U.S.C. § 823) to handle Schedule I or II controlled substances . . . may obtain and use DEA Form 222 . . . ." 21 C.F.R. § 1305.04.  Any "person with an active registration that is authorized to order schedule I and II controlled substances is entitled to obtain a DEA Form 222" and "may requisition the forms through [DEA]." 21 C.F.R.

§ 1305.11(b).  Each request for DEA Form 222 "must show the name, address, and registration number of the registrant[.]" 21 C.F.R. § 1305.11(c).  DEA issues Form 222 "with the name, address, and registration number of the registrant, the authorized activity, and schedules of the registrant." 21 C.F.R. § 1305.11(d).  "This information cannot be altered or changed by the registrant." *Id.*

While DEA has categorically refused Professor Hansten's FOIA request, DEA has responded substantively to similar requests in the past.  *See* DEA FOIA Logs (true and correct copies are attached hereto as **Exhibit 3** (relevant portions highlighted**)**.  According to the publicly available DEA FOIA Logs maintained by DEA, since 2013 DEA has released information related to DEA Form 222 on at least two separate occasions.  *Id.*  On at least eight separate occasions, DEA undertook a search for information related to DEA Form 222 in response to a FOIA request, but denied the request because DEA claimed the requested information did not exist.  *Id.*

### 2.     Professor Hansten's Areas of Research

Professor Hansten has an academic and professional interest in drug interactions. Ex. 1, Hansten Decl. ¶ 2.  He is interested in learning more information about drug suppliers.  *Id.,* ¶ 8. Among other studies, Professor Hansten researches the drug interactions of opioids and benzodiazepines.  *Id.,* ¶ 7.  He has observed individuals taking these drugs therapeutically having serious drug interactions.  *Id.*  He conducts epidemiological studies of adverse drug effects and drug interactions, and sometimes gets different results for particular drugs from different geographic locations in the country in different timeframes.  *Id.*

Professor Hansten has observed cases of drugs from other countries being sub-potent or adulterated with other chemical entities.  Ex. 1, Hansten Decl. ¶ 8.  If he observes an unusual response to a drug interaction in a specific patient, the drug supplier may be the cause.  *Id.*  This is particularly true in the case of opioids and benzodiazepines where small differences in potency

can have disastrous results.  *Id.*  Given that some parts of the country are more likely to use a given drug from certain suppliers, information about orders from drug suppliers may allow Professor Hansten to discern differences in epidemiological outcomes depending on predominance of certain suppliers in certain locations across different timeframes.  *Id.*

### 3.    Professor Hansten's FOIA Request and Complaint

On March 10, 2021, Professor Hansten, through counsel, submitted a FOIA request to DEA (the "Request").  Ex. 1, Hansten Decl. ¶ 9 and Ex. A.  The Request sought the following records in the custody or control of DEA: Records sufficient to show the names, addresses, and business activities of all parties that were issued DEA Forms 222 in which the "Date Issued" on the form is 05/11/2011 (May 11, 2011).  *Id.*

On the day Professor Hansten submitted his Request, DEA sent an automatic reply to the Request.  Ex. 1, Hansten Decl. ¶ 10 and Ex. B.  The automatic reply stated:

> The Drug Enforcement Administration (DEA) inbox facilitates the submission of Freedom of Information Act (FOIA) and/or Privacy Act (PA) requests for access to DEA records….If you are submitting a FOIA request, this email serves as a courtesy reply. However, this does not replace the Acknowledgement letter that will be sent to you once your request has been scanned into our FOIA processing system. Please note, requests are handled in the order they are received. We will advise you if any additional information is required.

*Id.*  This courtesy reply did not contain any estimated timeline for the acknowledgment letter or for a substantive response to the Request.  *Id.*

Nearly one month later, on April 3, 2021, having not received the acknowledgment letter referenced in DEA's March 10, 2021 courtesy reply or any other response, Professor Hansten, through counsel, contacted DEA at [DEAFOIAPAQUESTIONS@dea.usdoj.gov](mailto:DEAFOIAPAQUESTIONS@dea.usdoj.gov) to inquire into the status of the acknowledgment letter and to request a FOIA/PA case number.  Ex. 1, Hansten Decl. ¶ 11 and Ex. C.

On April 7, 2021, DEA sent a further courtesy reply.  Ex. 1, Hansten Decl. ¶ 12 and Ex. D. This second courtesy reply provided a FOIA/PA Request Number of 21-00286-F.  *Id.*  The communication stated:

> This is to acknowledge receipt of your Freedom of Information Act/Privacy Act (FOIA/PA) request by the Drug Enforcement Administration, FOIA/PA Section.  This response is a courtesy reply.  It does not replace the acknowledgement letter that will be sent to you once your request has been reviewed by our Intake Unit.  Please note, requests are handled in the order they are received.  We will advise you if any additional information is required.

*Id.*  This communication further stated: "Please be advised, due to necessary operational changes as a result of the national emergency concerning the novel coronavirus disease (COVID-19) outbreak, there may be some delay in the processing of your request."  *Id.*  The second courtesy reply did not contain any estimated timeline for the acknowledgment letter or for a substantive response to the Request.  *Id.*

Having received no other substantive response at the time, Professor Hansten filed the instant Complaint against DEA on July 28, 2021 for denial of the Request.  Ex. 1, Hansten Decl. ¶ 13; Complaint, ECF No. 1.

### 4.    DEA's Response and Answer to the Complaint

On August 27, 2021, after the Complaint was filed, DEA further responded to the Request with a categorical denial to search for or to produce any information (the "Denial").  Ex. 1, Hansten Decl. ¶ 14 and Ex. E.  The Denial provides:

> We have determined that any records responsive to [the Request] are categorically exempt from disclosure pursuant to 5 U.S.C. § 555(b)(7)(E).  Accordingly, this office is not required to conduct a search for the requested records.  Records being withheld in full pursuant to 5 U.S.C. § 555(b)(7)(E), which concerns records or information compiled for law enforcement the release of which could disclose techniques and procedure for law enforcement investigations or purposes.
>
> For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c).  This response is limited to those records that are subject to the

requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that the excluded records do, or do not, exist.

*Id.*  As DEA admittedly did not conduct any search based on the Request, it did not produce a *Vaughn* Index.  *Id.,* ¶ 15.  Nor did it provide a declaration supporting the Denial.  *Id.*

DEA filed its Answer to the Complaint on September 3, 2021.  *See* Answer, ECF No. 6. In its Answer, DEA admits it failed to provide a substantive response by the time the Complaint was filed.  *Id.,* ¶ 13.  DEA also admits that, after the Complaint was filed, it denied Professor Hansten's Request because any responsive records "were categorically exempt from disclosure pursuant to 5 U.S.C. § 555(b)(7)(E)[.]"  *Id.[1]*

## III.   **STANDARD OF REVIEW**

This Court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  *Id.,* at 248. *See also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002).  "Conclusory allegations unsupported by factual data will not create a triable issue of fact."  *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 185 F.3d 898, 908 (D.C. Cir. 1999) (citations omitted).  In ruling on "cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are

---

[1] Even though DEA has now issued the Denial, the Court's review of DEA's denial of Professor Hansten's request is proper since he has exhausted all administrative remedies due to DEA's failure to respond within the statutory deadline.  *See* 5 U.S.C. § 555(a)(6)(C); *see also Waldner v. U.S. Dep't of Justice*, 981 F. Supp. 2d 14 (D.D.C. 2013) (denying motion to dismiss a complaint where, like here, the complaint was based on a constructive denial under the FOIA, and the DOJ later issued a denial), *aff'd*, 13 CV 5350, 2014 WL 3014045 (D.C. Cir. 2014).  DEA, in its Answer, did not challenge the Court's jurisdiction in this matter.

not genuinely disputed." *Elec. Privacy Info. Ctr. v. Customs & Border Prot.*, 160 F. Supp. 3d 354, 357 (D.D.C. 2016) (quoting *Shays v. Fed. Election Comm'n*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006)).

"FOIA cases are typically resolved on motions for summary judgment." *Id.* (citing *Ortiz v. U.S. Dep't of Justice*, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Summary judgment in a FOIA case can be based solely on information provided in affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Braun v. U.S. Postal Serv.*, 317 F. Supp. 3d 540, 546 (D.D.C. 2018) ("[T]he court may rely on a reasonably detailed affidavit" which are afforded "a presumption of good faith [and] cannot be rebutted by purely speculative claims" when granting summary judgment in a FOIA proceeding) (citations and quotations omitted).  "The Court will grant summary judgment based on those declarations only if they 'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" *Connell v. United States S. Command*, No. CV 18-1813 (RDM), 2020 WL 6287467, at *2 (D.D.C. Oct. 27, 2020) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)).  A court should grant summary judgment to the Government in a FOIA case only when the agency proves that it "has fully discharged its obligations under [FOIA], after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Electronic Privacy Info. Ctr.*, 160 F. Supp. 3d at 357 (citations omitted).

## IV.   ARGUMENT

### A.      The Purposes of FOIA

In 1966, Congress amended FOIA to implement "a general philosophy of full agency disclosure." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754-

55 (1989).  The "core purpose" of FOIA is to "contribut[e] significantly to public understanding of the operations or activities of the government.'"  *Id.*, at 775 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  There is a "very public interest central to the purposes of FOIA . . . . furthering the right of the public to know 'what their government is up to.'"  *Ludlam v. U.S. Peace Corps*, 934 F. Supp. 2d 174, 187 (D.D.C. 2013) (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 773).

"Disclosure, not secrecy, is the dominant objective of FOIA."  *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citation omitted); *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999) ("The [FOIA] adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies.").  When it enacted FOIA, "'Congress established -- in the absence of one of that law's clearly delineated exemptions -- a general, firm philosophy of ***full agency disclosure***, and provided *de novo* review by federal courts so that citizens and the press could obtain agency information wrongfully withheld.'"  *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (quoting *Halpern*, 181 F.3d at 287) (emphasis added).

FOIA requires "federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).  Congress enumerated "nine categories of documents" exempt from "FOIA's broad disclosure requirements."  *Reporters Comm. for Freedom of Press*, 489 U.S. at 755-56.  Consistent with FOIA's purpose of "'open[ing] agency action to the light of public scrutiny,'" and because these "'exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act,'" FOIA's exemptions are "to be narrowly construed" and "the government has the burden of justifying withholding under any of FOIA's

exemptions." *ACLU v. U.S. Dep't of Justice*, 880 F.3d 473, 482-83 (9th Cir. 2018) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)); *Boyd v. Criminal Division of U.S. Dep't of Justice*, 475 F.3d 381, 385 (D.C. Cir. 2007).

To meet this burden, the government "typically submits a *Vaughn* Index, which provides 'a relatively detailed justification' for each withheld document, 'specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply.'" *Electronic Privacy Info. Ctr.,* 160 F. Supp. 3d at 357-58 (quoting *King,* 830 F.2d at 219). The government must "address what procedures are at stake, and how disclosure of the materials would reveal such procedures." *Citizens for Resp. & Ethics in Washington v. Gen. Servs. Admin.*, No. CV 18-2071 (CKK), 2021 WL 765659, at *3 (D.D.C. Feb. 26, 2021). "Near-verbatim recitation of the statutory standard is inadequate." *Id.* (quoting *C.R.E.W. v. Dep't of Justice*, 746 F.3d 1082, 1102 (D.C. Cir. 2014)).

### B.    Exemption 7(E) Does Not Apply to the Requested Information

Exemption 7(E) applies to "records or information compiled for law enforcement purposes," disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). DEA has not met its burden of showing why the requested information is categorically exempt from court review and production under FOIA. The simple fact that DEA, as part of the Department of Justice, has a law enforcement role and some of the information related to Forms 222 may be relevant to some law enforcement investigation or prosecution, does not justify DEA's broad assertion of categorical exemption from FOIA. To determine that Exemption 7(E) protects such basic information simply because of DEA's broader law enforcement role, would be to invite a broad exclusion for the application of FOIA to DEA and,

potentially, the entire Department of Justice and other federal agencies with law enforcement missions.

DEA cannot establish that Exemption 7(E) applies to the Request for three reasons. First, the requested information was compiled for record-keeping purposes, not for law enforcement investigations or prosecutions. Second, even if, arguably, some of the requested information is useful for law enforcement investigations or prosecutions, the records requested would simply disclose which pharmacies, doctors, and state functions are authorized purchasers or suppliers of Schedule I or II substances and were issued DEA Forms 222 on a specific date. Professor Hansten has not requested records pertaining to law enforcement investigations or prosecutions. At a minimum, DEA should be required to differentiate those few records that may be relevant to law enforcement investigations or prosecutions from the presumed majority of others, which are releasable. Third, the disclosure of information provided by third parties to DEA when being issued DEA Forms 222 does not disclose "techniques and procedures for law enforcement investigations or prosecutions" as the information is unrelated to techniques, guidelines, and procedures and the process for filing DEA Forms 222 is publicly known. Disclosure of the requested information poses no risk of circumvention of the law.

### 1. Exemption 7(E) Does Not Apply Because the Requested Information was Compiled for Record Keeping Purposes

First, the court should determine whether Exemption 7 applies at all --that is, whether the requested records or information compiled for law enforcement purposes. *See Pub. Empls. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014); *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). "[T]he focus is on how and under what circumstances the requested files were compiled." *Jefferson*, 284 F.3d at 176-77. "[T]he District Court must determine whether the prospect of enforcement

proceedings is concrete enough to bring into operation the exemption for investigatory files." *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 939-40 (D.C. Cir. 1970). Most, if not all, of the information requested by Professor Hansten, was compiled for record keeping and not the purpose of conducting law enforcement investigations or prosecutions.

Even though agencies specializing in law enforcement are entitled to deference with regard to their decision to invoke Exemption 7, *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998), the "court's 'deferential' standard of review is not, however, 'vacuous.'" *Id.* (quoting *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982)). "First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security." *Pratt*, 673 F.2d at 420; *see also Pub. Empls.* 740 F.3d at 203. To satisfy this "nexus" requirement, the DEA should "identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law." *Pratt*, 673 F.2d at 420; *see also see Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 926 (D.C. Cir. 2003). "The possible violation or security risk is necessary to establish that the agency acted within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Pratt*, 673 F.2d at 420. Second, the agency must offer sufficient information to establish a rational "nexus between the investigation and one of the agency's law enforcement duties." *Id.*, at 421.[2]

---

[2] While this same analysis does not apply to generic investigative materials, that exception is inapplicable to Professor Hansten's Request. "Agency material relating to guidelines, techniques, and procedures for law enforcement investigations and prosecutions *outside the context of a specific investigation"* "satisf[ies] the 'law enforcement purposes' threshold. *Tax Analysts v. IRS,* 294 F.3d 71, 78 (D.C. Cir. 2002) (emphasis added). The Request sought information about DEA Forms 222 issued on a specific date, and DEA has not shown how that information reflects guidelines, techniques, and procedures that guide the conduct of investigations.

Applying this analysis here, it is clear that the Request does not seek "records or information compiled for a law enforcement purposes."  Professor Hansten has not requested information from the completed DEA Forms 222 themselves, but rather information about DEA registrants who were *issued* DEA Forms 222.  Registrants, not the DEA, provide this information. *See* 21 C.F.R. § 1305.11.  DEA compiles this information as part of a routine recordkeeping process.  DEA has not compiled it for the purpose of conducting specific law enforcement investigations or prosecutions.  Part of DEA's function is to "ensur[e] an adequate and uninterrupted supply [of pharmaceuticals and listed chemicals] for legitimate medical, commercial, and scientific needs" and "monitor the movement of licit controlled substances across U.S. Borders."  Ex. 2, DEA Program Description.   To that end, parties dealing with controlled substances must register with DEA and "comply with regulatory requirements" relating to "recordkeeping."  *Id.*

Records that DEA compiles, reflecting issuance of the Forms 222, normally would not be compiled in order to identify a particular individual or incident that is the object of a law enforcement investigation or prosecution.  *See Pratt,* 673 F.2d at 420.  Instead, the material is akin to "general monitoring of private individuals' activities," falling outside of the category of "law enforcement purposes."  *Id.*  Exemption (7)(E) is inapplicable because most if not all of the requested DEA records do not relate to an identifiable investigation or prosecution, nor are they compiled to guide the conduct of investigations or prosecutions.  DEA has the burden of explaining how information about registrants who were issued Forms 222 on a specific date, over ten years ago, have a current nexus with a specific law enforcement investigation or prosecution.  If it cannot meet this burden, it cannot rely on the exemption.

### 2. Exemption 7(E) Does Not Apply Because the Requested Information Applies to Authorized DEA Registrants

Second, even if, arguably, some of the information from the forms were compiled by DEA for, or may become relevant to, a specific investigation or prosecution, the vast majority of information compiled by DEA certainly will still not fall under Exemption 7(E).  DEA has not demonstrated to the contrary.  As only DEA registrants who have the legal authority to handle Schedule I and II controlled substances are issued DEA Forms 222, only in the rarest of circumstances would information from DEA Forms 22 issued on a particular date be the subject of a specific enforcement investigation or prosecution.  *See* 21 C.F.R. § 1305.11.  The majority, if not all of the DEA registrants issued DEA Forms 222 on a specific date are legitimate pharmacies, doctors, and state functions since only these authorized acquirers of control substances are permitted to file Form 222.  *Id.*  The possibility that an extremely small number may be involved in a specific investigation does not support the categorical exemption claimed by the DEA here.

### 3. Exemption 7(E) Does Not Apply Because the Requested Information Does Not Disclose Techniques, Procedures or Guidelines which Pose a Risk of Circumvention of the Law

Third, the release of records merely reflecting entities issued Forms 222 on a particular date does not pose a risk of disclosure of techniques, procedures, or guidelines which risks circumvention of the law.  Even where information has been compiled for law enforcement purposes, it is exempt from disclosure only if its release "disclose[s] techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions" which reasonably poses a risk of "circumvention of the law." 5 U.S.C. § 552(b)(7)(E)*; see Pub. Empls.,* 740 F.3d at 204 n.4 (explaining that the D.C. Circuit has applied the risk of circumvention requirement "both to records containing guidelines and to records

containing techniques and procedures"); *Elec. Privacy Info. Ctr,* 160 F. Supp. 3d at 359. Neither of the two requirements are met here.

"Techniques and procedures" refer to processes or methods by which a law enforcement "goes about" enforcing the law. *See Whittaker v. U.S. Dep't of Justice,* Case No. 18-cv-01434, 2019 WL 2569915, at *1-2 (D.D.C. June 21, 2019). "Guidelines" refer to directions on when and where to investigate or prosecute a matter and courts have interpreted the term to include "manuals, policy guidance documents, settlement guidelines, monographs, and emergency plans." U.S. Dep't of Justice, Guide to the Freedom of Information Act 648 (2009) (footnotes omitted). The requested information in the instant matter are names, addresses, and business activities of DEA Registrants that were issued DEA Forms 222 on a specific date. DEA has not shown that these names and addresses, standing alone, amount to techniques, procedures and guidelines, the disclosure of which would reveal processes or methods by which DEA enforces the law.

Invoking Exemption 7(E) implies there is something to keep from public disclosure for a valid reason; that is, that the information is a secret. Thus, it is properly invoked only for techniques, procedures, or guidelines "generally unknown to the public." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.,* 30 F. Supp. 3d 67, 75 (D.D.C. 2014) (quoting *Albuquerque Pub. Co. v. U.S. Dep't of Justice,* 726 F. Supp. 851, 857 (D.D.C. 1989)); *see also Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 885 (D.D.C. 1991). The publicly available codified procedures set forth DEA Form 222 as the method for requesting the forms and for collecting information on orders for Schedule I and II controlled substances. *See* 21 C.F.R. § 1305.01 *et seq.* Additionally, DEA's website contains links to DEA Forms 222, "Q&As" for those completing the forms," and a number of publicly available "registration tools" for DEA

registrants.[3]  The DEA website also contains a link to an accessible population database of active registrants who are registered to handle Category I and II controlled substances.[4]  Consequently, the public is aware that DEA collects the requested information.  As the information is generally known to the public, *see Am. Immigration Council,* 30 F. Supp. 3d at 75, Exemption (7)(E) is inapplicable.

Further, DEA has not shown why there is a risk of circumvention of the law resulting from the disclosure under FOIA of the information Professor Hansten has requested, particularly in light of the fact that the information relates to legally authorized DEA registrants.  DEA's conclusory assertion of Exemption 7(E) in the Denial does not explain how its disclosure could risk "circumvention of the law."  Only presumably legitimate DEA registrants can request and complete DEA Forms 222.  *See* 21 C.F.R. § 1305.04 ("Only persons who are registered with DEA under section 303 of the [Controlled Substances] Act (21 U.S.C. 823) to handle Schedule I or II controlled substances … may obtain and use DEA Form 222[.]"); 21 C.F.R. § 1305.11 (setting forth information required from registrants to order DEA Form 222).  Since DEA Form 222 can be requested and used only by people and entities with legal authority to handle Schedule I and II controlled substances, DEA has failed to meet its burden of showing how disclosure of information about those who were issued the form could pose a risk to currently on-going investigations or prosecutions.  Exemption 7(E) does not apply.

---

[3] This information is available at the DEA website: *https://www.deadiversion.usdoj.gov/faq/form_222_faq.htm* and *https://www.deadiversion.usdoj.gov/drugreg/index.html*.  A copy of these webpages are attached hereto as **Exhibit 4** and **Exhibit 5**.
[4] *See https://apps2.deadiversion.usdoj.gov/RAPR/raprRegistrantPopulationByStateAndBusinessActivity.xhtml#no-back-button* A copy of this webpage is attached hereto as **Exhibit 6**.

### C.   DEA's "Categorical" Refusal to Search for Documents under Exemption 7(E) is Improper

DEA has not only wrongly denied the production of documents under Exemption 7(E), but also has refused to even search for documents and produce a *Vaughn* Index, or provide an explanation for its refusal to do so beyond a repetition of the language of Exemption 7(E).  This completely contradicts the "philosophy of full agency disclosure" upon which FOIA is rooted.  *Animal Legal Def. Fund*, 836 F.3d at 990 (en banc) (quoting *Halpern*, 181 F.3d at 287).  DEA has opted for *no* agency disclosure whatsoever.  Rather, DEA is claiming a categorical exemption under Exemption 7(E) for information related to DEA Forms 222, which, according to DEA, excuses it from even looking for the documents.  Thus, DEA does not even give Professor Hansten and this Court the courtesy of an opportunity to evaluate the asserted reasons for DEA's declination by providing a description of the subject documents in a *Vaughn* Index.  Without a *Vaughn* Index or similar supporting declaration, however, DEA places itself above judicial review, making it impossible for Professor Hansten to plead his case or for the Court to evaluate the parties' positions.  At the very least, DEA should be required to conduct a search, produce a *Vaughn* Index, and justify each individual withholding before denying the Request.

### 1.   DEA Should be Required to Search for Responsive Documents and Prepare a *Vaughn* Index

DEA asserts that information related to DEA Forms 222 is "categorically exempt from disclosure pursuant to 5 U.S.C. § 555(b)(7)(E)," and refuses to produce a *Vaughn* Index.  Ex. 1, Hansten Decl. ¶ 14 and Ex. E.  In *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 244-47 (D.D.C. 2013), the government, claiming an exemption under 7(E), had submitted an index but the court found that it fell "well below the standard."  The court held that "[a]t a minimum, Defendants must provide an itemized listing of their withholdings and redactions

pursuant to 7(E), accompanied by a description of the circumstances in which the records were

compiled." *Id.*, at 246.  The court recognized that although it is:

> [N]ot expecting such full disclosure as to defeat the purpose of the exemption … [C]ourts
> in this District have found that the government carried its evidentiary burden where it
> provided 1) a description of the technique or procedure at issue in each document, 2) a
> reasonably detailed explanation of the context in which the technique is used, 3) an
> exploration of why the technique or procedure is not generally known to the public, and 4)
> an assessment of the way(s) in which individuals could possibly circumvent the law if the
> information were disclosed.

*Id.*, at 247.  DEA's Denial and Answer provides *none* of this required information and is grossly

insufficient.  Accordingly, the Court should order DEA to search for the documents and produce

a *Vaughn* Index that identifies the documents being withheld and the basis for their withholding.

*See also Villanueva v. U.S. Dep't of Justice*,  2021 WL 4342004, at *22 (Aug. 12, 2021) (finding

that a defendant invoking exemption 7(E) must identify "documents or portions of documents…so

that the Court has the factual basis to determine which, if any,…are properly withheld"), *report

and recommendation adopted,*, No. 19-23452-CIV, 2021 WL 4338976 (S.D. Fla. Sept. 23, 2021).

## 2.      DEA Should be Required to Justify Fully its Denial of Access

Even if a *Vaughn* Index is not required, DEA must provide more information to support its

categorical denial of the documents.  All DEA has provided in this case is a near-verbatim

recitation of the statutory standard for Exemption 7(E).  This is not enough.  *See Advancement

Project v. U.S. Dep't of Homeland Sec.*, No. 19-52, 2021 WL 3036723, at *10 (D.D.C. July 19,

2021) ("An agency cannot justify an Exemption 7(E) withholding by offering a near-verbatim

recitation of the statutory standard that does nothing to explain what procedures are at stake or

how disclosure [of the withheld records] could reveal such procedures.") (internal quotations

removed).  A copy of this decision is attached hereto as **Exhibit 7**.

In *Heartland Alliance for Human Needs & Human Rights v. ICE*, 406 F. Supp. 3d 90

(D.D.C. 2019), the defendant agency did not produce a *Vaughn* Index and relied on FOIA

Exemption 7(E) as well as Exemption 5 to withhold documents.  As in this litigation, "because there [was] no *Vaughn* Index, Plaintiff ha[d] no other way to effectively test, nor [could] this Court independently assess, the application of exemptions to the records at issue and determine whether those exemptions are justified." *Id.,* at 126.  The court acknowledged that in certain instances "[a]n agency does not necessarily need to produce a *Vaughn* Index." *Id.,* at 125.  Where no *Vaughn* Index is provided, however, the court must be able to look to supporting declarations provided by the defendant.  *Id.*, at 125-26.  These declarations must provide the same level of specificity as required in a *Vaughn* Index in order for the court to make a determination.  *Id.*  A defendant agency must provide one or the other:

> Regardless of *how* an agency carries its burden, the bottom line is that, as a matter of law, FOIA itself places the burden on the agency to sustain the lawfulness of specific holdings in litigation.

*Id.,* at 125 (internal citations omitted) (emphasis in original).

The "[n]ear-verbatim recitation of the statutory standard is inadequate." *Citizens for Resp. & Ethics in Washington v. Gen. Servs. Admin.*, No. CV 18-2071 (CKK), 2021 WL 765659, at *3 (D.D.C. Feb. 26, 2021) (finding that produced *Vaughn* index was insufficient to explain basis for exemption) (internal quotations and citations omitted).  DEA must "address what procedures are at stake, and how disclosure of the materials would reveal such procedures." *Id.*  Without this specificity, it is unclear how Professor Hansten -- or the Court -- can assess the Denial.  DEA has not met its burden of explaining how a list of registrants that were issued DEA Forms 222 on May 11, 2011 discloses a technique, procedure, or guideline related to a law enforcement procedure or investigation.  The Court should require DEA to search for responsive information and provide a *Vaughn* Index or, at a minimum, a detailed declaration -- made available to Professor Hansten -- which properly explains the basis of its Denial based on Exemption 7(E).

### D.    DEA's Denial Must Be Scrutinized In Light of Prior Disclosures

Despite DEA's current categorical claim of Exemption 7(E) protection, this has not always been that agency's position under FOIA.  In fact, DEA has produced DEA Forms 222 and searched for others in response to prior FOIA requests seeking such information.  Thus, DEA's prior response to requests similar to Professor Hansten's casts substantial doubt on its current claim of categorical exclusion from the application of FOIA to these records.

It is well-established that "[v]oluntary disclosure of information may waive an otherwise valid FOIA exemption." *Mehl v. U.S. EPA,* 797 F. Supp. 43, 47 (D.D.C. 1992); *see Mobil Oil Corp. v. EPA,* 879 F.2d 698, 700–01 (9th Cir. 1989).   To be sure, disclosure of one set of documents does not establish waiver as to related documents.  *See Mehl,* 797 F. Supp. at 47; *Mobil Oil Corp.,* 879 F.2d at 701.  But, at a minimum, prior disclosure of the same type of information justifies heightened scrutiny and places the burden on DEA to justify the distinction in its treatment of similar FOIA requests.

Despite DEA's absolute refusal to comply with FOIA requirements in connection with Professor Hansten's request, the DEA FOIA Logs demonstrate that DEA has both searched for *and* produced information related to DEA Forms 222 on multiple occasions.  DEA has released information from DEA Forms 222 in response to FOIA requests on at least two separate occasions.  *See* Ex. 3,   DOIA FOA Logs.

As DEA has released information related to DEA Form 222 in the past, its refusal to do so now not only goes against FOIA's spirit of "full agency disclosure," but it also amounts to withholding information on a file-by-file basis.  It is well-established that an agency cannot withhold under the (b)(7) exemptions on a file-by-file basis.  *See, e.g., Prop. of the People, Inc. v. Dep't of Justice.*, No. CV 17-1193 (JEB), 2021 WL 3052033, at *3 (D.D.C. July 20, 2021)

(requiring government to produce a *Vaughn* Index because it had withheld at the file level).  DEA should be required to search for and produce the requested information.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Professor Hansten respectfully requests that the Court grant his Motion for Summary Judgment and enter judgment in his favor and against DEA, ordering DEA to search for and produce documents responsive to the Request.

Dated: October 22, 2021                              Respectfully submitted,

*/s/ Daniel C. Schwartz*
Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com
*Attorneys for Plaintiff Prof. Philip Hansten*