EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| PHILIP HANTSEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-2043 (RC) |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**DECLARATION OF ANGELA D. HERTEL**

I, Angela D. Hertel, declare the following to be true and correct:

1.      I am currently the Unit Chief of the Legal and External Affairs Unit, Freedom of Information and Privacy Act Section, of the United States Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA"), located at DEA Headquarters in Arlington, Virginia. I have served in this capacity since October 1, 2020. Prior to this, since May 2019, I served as the Acting Unit Chief of the Freedom of Information/Privacy Act Unit before an internal reorganization in October 2020.  I have been responsible for working on DEA matters related to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a (cited together as "FOIA/PA") since 2009.

2.      As the Unit Chief, I, in part, oversee the processing of certain requests to the DEA under the FOIA/PA. Due to the nature of my official duties and my experience in responding to requests for DEA records since 2009, I am knowledgeable about the policies and practices of the DEA related to search, process, and disclosure of DEA information pursuant to the FOIA/PA.

3.      To prepare this declaration, I have read and am familiar with the Complaint in the above styled action.

4.      The statements I make in this declaration are true and correct to the best of my belief and are based on my personal knowledge as well as information acquired by me in the course of performing my official duties.

## LAW ENFORCEMENT MISSION OF DEA

5.      The mission of the DEA is to enforce the controlled substance laws and regulations of the United States. DEA's investigative jurisdiction derives from the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. ("the CSA" or "the Act"). The CSA authorizes the DEA to enforce the Act through the investigation of trafficking in controlled substances and the violators who operate at interstate and international levels.  This mission involves conducting criminal investigations to assist prosecutions of organizations and principal members of organizations involved in the growing, manufacture, or distribution of controlled substances appearing in or destined for illicit traffic in the United States. DEA also provides support to non-law enforcement programs aimed at reducing the availability of illicit controlled substances on the domestic and international markets.

## CHRONOLOGY

6.      By letter dated March 10, 2021, Plaintiff, Philip Hansten, submitted a request letter to DEA.  Plaintiff sought copies of, "[r]ecords sufficient to show the names, addresses, and business activities of all parties that were issued DEA Form 222s[1] in which the "Date Issued" on the form is 05/11/2011 (May 11, 2011)."  **Exhibit A**.

7.      By email dated April 7, 2021, DEA acknowledged receipt of the request and assigned it case number 21-00286-F.  **Exhibit B**.

8.      Plaintiff filed his complaint on July 28. 2021.

---

[1] *U.S. Official Order Form for Schedule I and II Controlled Substances* (DEA Form 222); *see* 21 C.F.R. Part 1305 (Orders for Schedule I and II Controlled Substances).

9.      By letter dated August 27, 2021, DEA informed Plaintiff that any records responsive to Plaintiff's request are categorically exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E) and are being withheld in full. DEA's August 27, 2021 correspondence explained that as any responsive records were categorically exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E), DEA was not required to conduct a search for the requested records.  **Exhibit C**.

## DEA FORM 222

10.     A DEA Form 222 or its electronic equivalent allows a registrant to order and transfer Schedule I and II controlled substances, and is required for distribution of a Schedule I or II controlled substance (21 C.F.R. § 1305.03). Drugs and other substances that are considered controlled substances under the Controlled Substances Act (21 U.S.C. § 828) are divided into five schedules. An updated and complete list of the schedules is published annually in Title 21 C.F.R. §§1308.11 through 1308.15. The Controlled Substances Act established a closed system for controlled substance distribution. This closed system allows for controlled substances to be traced from initial manufacture to final dispensing. Under the closed system, record-keeping is required for the transfer and distribution controlled substances from the creation to disposal. DEA requires that DEA Form 222 be maintained separately from all other records of the registrant. When controlled substance transactions fall outside the closed system of distribution, the activity constitutes diversion.  Only persons who are registered with DEA under section 303 of the Act (21 U.S.C. § 823) to handle Schedule I or II controlled substances may obtain and use DEA Form 222 (order forms) or issue electronic orders for these substances (21 C.F.R. 1305.04(a)). Each DEA Form 222 will have an order form number and be issued with the name, address and registration number of the registrant, the authorized activity, and schedules of the registrant (21 C.F.R. § 1305.11(c)). Any person holding a registration authorizing the person to obtain a DEA Form 222

may requisition the forms through a DEA secured network connection or by contacting any Division Office or the DEA Registration Section  (21 C.F.R. § 1305.11(b)).

**DEA'S JUSTIFICATION FOR CATEGORICAL APPLICATION OF EXEMPTION 7(E)**

11.     FOIA Exemption 7 protects from disclosure information compiled for law enforcement purposes. As noted above, DEA's investigative jurisdiction derives from the CSA, which authorizes DEA to enforce the CSA through investigation of activity that would divert controlled substances from legitimate channels. Unlawful diversion of controlled substances may result in administrative action, civil penalties, and criminal prosecution of individuals and entities.[2]

12.     All potentially responsive records that are contained within DEA's files would have been compiled for law enforcement purposes. These records were created and maintained by law enforcement employees in the course of their official duties enforcing the CSA. Accordingly, all of the records that DEA could conceivably possess related to Plaintiff's request should be considered appropriate for application of one or more of the FOIA exemptions set forth in 5 U.S.C. § 552(b)(7).

13.     Once the law enforcement purpose threshold is reached, Exemption 7(E) exempts from mandatory disclosure "records or information compiled for law enforcement purposes" when disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. 5 U.S.C. § 552(b)(7).

**EXEMPTION 7(E)**

14.     FOIA Exemption 7(E) protects "records or information compiled for law enforcement purposes" when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

---

[2] *See, e.g.,* 21 U.S.C. § 843(a)(1) which provides that it shall be unlawful for a registrant to distribute a controlled substance classified in schedule I or II, in the course of his legitimate business, except pursuant to an order or an order form as required by 21 U.S.C. § 828.

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  DEA categorically applied Exemption 7(E) to protect the order form number; name, address and registration number of the registrant; the authorized activity, and schedules of the registrant. The information that the DEA has withheld under Exemption 7(E) is located in a non-public database, the information is not publically disclosed, and none of the information requested in this case has previously been disclosed by DEA.

15.     The effectiveness of DEA's mission is dependent to a large extent on the use of sensitive collection techniques and methods that are not known to the general public. These law enforcement techniques and procedures are critical tools used by DEA to efficiently and effectively carry out DEA's mission to regulate the distribution of controlled substances for lawful uses.  The disclosure of these techniques and methods would seriously compromise DEA's ability to perform its law enforcement mission

16.     The disclosure of any information identifying the registrant and the registrant's activity would reveal information collected in furtherance of DEA's diversion control enforcement and would provide information to individuals seeking to circumvent the law and interfere with or target for harassment or theft, persons and businesses ordering and supplying controlled substances for lawful purposes.  In particular, information identifying a provider of controlled substances used in lethal injections would impair the government's ability to obtain lethal injection substances in the future.  The information collected from registrants pursuant to DEA's efforts to track the distribution of controlled substances for particular transactions, including the registrant's identity and their activity in controlled substances, is not generally known to the public. By using discrete pieces of information and applying a mosaic analysis, individuals of the public looking to harass, intimidate, or target providers of controlled substances for particular purposes may interfere with

5

the lawful distribution and use of controlled substances. DEA collects information from registrants for each order and distribution of controlled substances and maintains that information on DEA Form 222 for regulatory and investigative use in DEA's diversion control efforts. Disclosing information from a DEA Form 222, in whole or in part, to persons not party to the transaction would potentially interfere with lawful distribution and use of controlled substances by subjecting suppliers and users to harassment, interference, theft, or unwarranted scrutiny and would hamper DEA's investigation of unlawful diversion on the part of third parties having knowledge of orders, distribution channels, and uses for particular controlled substances.

17.     DEA determined that any records responsive to Plaintiff's request would identify a provider of controlled substances, the registrant's address, locations at which controlled substances are maintained, and the type and potential uses for the controlled substances distributed under the order.  DEA further believes that any responsive records may reveal the identity of a provider of controlled substances used in lethal injections. The disclosure of the identity of a provider would not only impair the government's ability to obtain lethal injection substances in the future, but also is typically kept private by both the provider themselves, and the government. This information is not customarily released to the public by the person from whom it was obtained because in DEA's experience the source of the lethal injection substances are commonly subject to harassment, threats, and negative publicity leading to commercial decline when it is discovered that they are providing substances to be used in implementing the death penalty.

18.     Plaintiff has made known his interest in death penalty drugs and drug compounds in comments posted to the webpage of Death Penalty Focus at https://deathpenalty.org/voices-philip-hansten.  The organization identifies itself as being founded by a group of California death penalty opponents.  These comments voice opposition both to the death penalty and to the involvement of pharmacists in preparing drugs for use in executions.  The web site states that,

"Hansten worked with an organization affiliated with Amnesty International to convince the American Pharmacists Association to include a statement in its code of ethics formally opposing pharmacists' involvement in executions."[3]

19.    DEA also believes that releasing a list of locations where Schedule I and II controlled substances (those substances with the highest potential for abuse) are maintained, would lead to those locations being targeted by criminals with the potential for diversion and harm to physical safety. The DEA Diversion Control Division notes that some registrants use their personal home addresses as their registered location, so there is a possibility that some of the addresses listed on DEA Form 222 are residential locations.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.


October 22, 2021
DATE                                                    _____
                                                        ANGELA D. HERTEL
                                                        Chief, Legal and External Affairs Unit
                                                        Freedom of Information and Privacy Act Section
                                                        Drug Enforcement Administration

---

[3] https://deathpenalty.org/voices-philip-hansten.  Comments attributed to Plaintiff on the webpage include the following:

> The states are using these drugs for a completely different purpose than they were designed for, which was to help people, not kill them. Another problem is that with lethal injection we're basically experimenting on people. We're experimenting every time we use these drugs, even more so with the cocktails that have never been studied. And even if we were to come up with the perfect injection we'd still have the problem that the person administering the drug isn't trained, which is why executions can and often do, go wrong. Our position is there's no way to do lethal injection that isn't brutal. Lethal injection is an abomination.
> We joined several other medical organizations — like the psychology association, the AMA, anesthesiologists — in codifying our position.
> When they included that in their code of ethics what they were saying is that it's unethical for a pharmacist to specially prepare drugs for execution.