**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PHILIP HANSTEN,<br>Plaintiff,<br>v.<br><br>DRUG ENFORCEMENT<br>ADMINISTRATION,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 1:21-cv-2043 |

<u>**PLAINTIFF PROFESSOR HANSTEN'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO DEFENDANT DRUG ENFORCEMENT
ADMINSTRATION'S MOTION FOR SUMMARY JUDGMENT**</u>

Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire  (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com

*Attorneys for Plaintiff Professor Philip Hansten*

Dated: November 29, 2021

## **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     BACKGROUND ........................................................................................................... 3

III.    ARGUMENT ................................................................................................................. 4

    A.      Defendant's Focus on the Identify of the Requester and the Alleged
            Purpose of the Request is Inappropriate, Irrelevant, and Runs Counter to
            Settled Precedent ................................................................................................. 4

    B.      DEA Has Not and Cannot Demonstrate that Responsive Documents Are
            Subject to Exemption 7(E) .................................................................................. 6

        1.      DEA Has Failed to Describe the Withheld Documents ............................ 6

        2.      DEA Incorrectly Claims that Exemption 7(E) "Categorically"
                Exempts Responsive Documents from Disclosure. ................................... 7

        3.      DEA Fails to Meet Both the Exemption 7 Threshold Burden and
                the Specific Requirements of Exemption 7(E) ......................................... 9

            a.      DEA has not shown that it meets the Exemption 7
                    threshold ....................................................................................... 9

            b.      DEA has not met the specific requirements of Exemption
                    7(E). ............................................................................................ 11

    C.      Even If Responsive Records Relate to Lethal Injection Drugs, Exemption
            7(E) Does Not Apply .......................................................................................... 14

    D.      DEA's Overly Broad Interpretation of Exemption 7(E) Would Mean that
            Any Document Held By a Law Enforcement Agency Would Be Entirely
            Exempt from Disclosure ..................................................................................... 15

IV.     CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albuquerque Pub. Co. v. DOJ,*
 726 F. Supp. 851 (D.D.C. 1989) ....................................................................11, 12

*Benavides v. BOP,*
 774 F. Supp. 2d 141 (D.D.C. 2011) ..........................................................................9

*Brick v. DOJ,*
 293 F. Supp. 3d 9 (D.D.C. 2017) ........................................................................2, 11

*Bristol-Myers Co. v. FTC,*
 424 F.2d 935 (D.C. Cir. 1970) ..................................................................................9

*Campbell v. DOJ,*
 164 F.3d 20 (D.C. Cir. 1998) ..............................................................................9, 10

*Citizens for Resp. & Ethics in Washington v. DOJ,*
 2021 WL 4502039 (D.D.C. Sept. 30, 2021) ............................................................14

*Citizens for Resp. & Ethics in Washington v. DOJ,*
 746 F.3d 1082 (D.C. Cir. 2014) ..............................................................................11

*Defenders of Wildlife v. U.S. Border Control,*
 623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................6, 7

*Dep't of Defense v. Fed. Labor Relations Auth.,*
 510 U.S. 487 (1994) ..................................................................................................5

*DOJ v. Reporters Comm. for Freedom of the Press,*
 489 U.S. 749 (1989) ..................................................................................................4

*Durns v. BOP,*
 804 F.2d 701 (D.C. Cir. 1986), *cert. granted, judgment vacated on other*
 *grounds & remanded,* 486 U.S. 1029 (1988) ..........................................................5

*Hall v. DOJ,*
 552 F. Supp. 2d 23 (D.D.C. 2008) ............................................................................6

*Jefferson v. DOJ,*
 284 F.3d 172 (D.C. Cir. 2002) .............................................................................9, 11

*Judicial Watch, Inc. v. FDA,*
 449 F.3d 141 (D.C. Cir. 2006) ..................................................................................7

*Lynch v. Dep't of the Treasury*,
210 F.3d 384 (9th Cir. 2000) ................................................................................5

*Memphis Pub. Co. v. FBI*,
879 F. Supp. 2d 1 (D.D.C. 2012) .........................................................................13

*Mezerhane de Schnapp v. United States Citizenship & Immigr. Servs.*,
67 F. Supp. 3d 95 (D.D.C. 2014) ...........................................................................5

*NARA v. Favish*,
541 U.S. 157 (2004)................................................................................................5

*Nat'l Sec. Archive v. FBI*,
759 F. Supp. 872 (D.D.C. 1991) ....................................................................11, 12

*North v. Walsh*,
881 F.2d 1088 (D.C. Cir. 1989) ......................................................................5-6, 14

*Parsons v. Freedom of Info. Act Officer*,
No. 96-4128, 1997 WL 461320 (6th Cir. Aug. 12, 1997) ......................................5

*Pratt v. Webster*,
673 F.2d 408 (D.C. Cir. 1982) .................................................................9, 10, 11

*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
740 F.3d 195 (D.C. Cir. 2014) ...............................................................................7

*Shapiro v. DOJ*,
37 F. Supp. 3d 7 (D.D.C. 2014) ...........................................................................11

*Smith v. BATF*,
977 F. Supp. 496 (D.D.C. 1997) .......................................................................7, 8

*Summers v. DOJ*,
934 F. Supp. 458 (D.D.C. 1996) .......................................................................9, 10

*Swan v. SEC*,
96 F.3d 498 (D.C. Cir. 1996) .................................................................................5

*United Techs. Corp. v. FAA*,
102 F.3d 688 (2d Cir. 1996).....................................................................................5

*Whittaker v. DOJ*,
Case No. 18-cv-01434, 2019 WL 2569915 (D.D.C. June 21, 2019)..................8, 15

*Wolf v. CIA*,
473 F.3d 370 (D.C. Cir. 2007) .............................................................................13

**Statutes**

5 U.S.C. § 552(b)(7) .................................................................................................1

5 U.S.C. § 552(b)(7)(E) .......................................................................................2, 7, 15

5 U.S.C. §§ 552 *et seq.*..........................................................................................1

**Regulations**

21 C.F.R. § 1305 *et seq.*........................................................................................12

21 C.F.R. § 1305.03 ...............................................................................................3

21 C.F.R. § 1305.04(a)...........................................................................................3

**Other Authorities**

BuzzFeed News, *FBI Documents Don't Back Up Claimed Threat To Execution
      Drug Supplier* (Aug. 29, 2016),
      https://www.buzzfeednews.com/article/chrismcdaniel/fbi-documents-dont-
      back-up-claimed-threat-to-execution-drug ........................................... 14-15

DEA Mission Statement, https://www.dea.gov/about/mission...................................1, 8

FBI Records, https://s3.documentcloud.org/documents/2991824/FBI-FOIA-
      Apothecary-Shoppe.pdf; .....................................................................14

https://apps.deadiversion.usdoj.gov/webforms2/spring/validationLogin ................12, 13

Defendant Drug Enforcement Administration's ("DEA") Motion for Summary Judgment ("DEA MSJ") should be denied.

## I.   **PRELIMINARY STATEMENT**

DEA's withholding of the information Professor Philip Hansten ("Professor Hansten") requests (the "Request") is based exclusively on Exemption 7(E) to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.* Exemption 7(E), however, does not apply to the requested information and DEA cannot demonstrate that the exemption applies. In fact, DEA completely fails to show that it meets the threshold requirements of Exemption 7 or the specific requirements of Exemption 7(E). Instead, it claims, wrongly, that it is enough to declare merely "because DEA is a law enforcement agency, DEA satisfies the threshold standard for invoking Exemption 7." DEA MSJ at 9. Thus, DEA's argument appears to be that simply because it has a law enforcement mission, among others,[1] all information contained in its files should be subject to Exemption 7.

Relying on that incorrect understanding of the law, DEA fails to demonstrate that the information Professor Hansten seeks involves "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), or that releasing that information would "disclose techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions . . . ," as is required to come under Exemption

---

[1]   For example, DEA lists among its missions, in addition to law enforcement activities:

- Coordination and cooperation with federal, state, and local agencies, and with foreign governments, in programs designed to reduce the availability of illicit abuse-type drugs on the United States market through nonenforcement methods such as crop eradication, crop substitution, and training of foreign officials.

www//dea.gov/about/mission (accessed 11/20/2021 3:39 pm).

7(E), 5 U.S.C. § 552(b)(7)(E).  Beyond that, DEA fails to demonstrate that such disclosure would pose a risk of "circumvention of the law," *id.*

This Court has consistently rejected similar efforts by other federal agencies with a mission that includes law enforcement to withhold all information held by that federal agency under Exemption 7 absent a specific justification. The Court in this District reprimanded the Federal Bureau of Investigation ("FBI") for similar behavior in *Brick v. DOJ*, 293 F. Supp. 3d 9 (D.D.C. 2017).  In *Brick*, "[t]he FBI's support for its claim that the records at issue were compiled for law enforcement purposes . . . consist[ed] almost entirely of the conclusory contention that 'the information collected was integrated into national security/criminal investigation of third party individuals.'"  *Id.* at 11.  Despite the fact that the FBI in *Brick* actually provided more data to the Court and the plaintiff than did the DEA here, the Court was clear: "Reliance on this unadorned statement to establish a law enforcement purpose for these records flouts more than 35 years of precedent that establishes that such bare contentions are simply not enough."  *Id.*  The Court went on to state that this was "not the first time that this Court ha[d] brought the persistent vagueness of the FBI's declarations in FOIA cases to the agency's attention."  293 F. Supp. 3d at 12 (collecting cases).

Similarly, here, the Court should reject DEA's argument that Exemption 7 applies just because DEA has a law enforcement mission.  Because DEA has not met its burden under Exemption 7 and Exemption 7(E), its Motion for Summary Judgment should be denied.

Rather than grapple with standards under Exemption 7(E), DEA improperly focuses its argument upon the identity of the requester, presupposing on the basis of his identity the purpose of the Request and the consequences that would result from complying with the Freedom of Information Act.  DEA's attack on Professor Hansten's identity motivations runs counter to settled

precedent and is inappropriate and irrelevant to the question of whether Exemption 7(E) applies to the requested information.  In doing so, however, DEA makes clear that Exemption 7(E) does not apply to the information DEA identifies as responsive to Professor Hansten's request, which DEA describes as relating to drugs used in executions, because such information pertains to "punishment" and not "investigations" or "prosecution."   There is no justification under Exemption 7(E) for withholding that information, or the other information Professor Hansten has requested.

## II.   <u>BACKGROUND</u>

The relevant background facts here are largely undisputed.  Professor Hansten submitted a FOIA request to DEA seeking records sufficient to show the names, addresses, and business activities of all parties to which DEA issued DEA Forms 222 in which the "Date Issued" on the form is May 11, 2011.  *See* Ex. 1 to Prof. Hansten's MSJ, Hansten Decl. ¶ 9 & Ex. A; *see also* Ex. 2 to DEA MSJ, Hertel Decl. ¶ 6.  Notably, this request did not seek copies of DEA Forms 222 themselves or information about specific drug transactions—it simply requested a list of legally authorized DEA registrants who were issued such Forms.  When DEA finally responded to the Request, DEA refused to produce or, purportedly, even search for responsive documents because DEA claimed: "any responsive documents were categorically exempt from disclosure."  Hansten Decl.  ¶¶ 14-15; Hertel Decl. ¶ 9.

It is undisputed that only persons registered legally with the DEA may obtain or use DEA Forms 222 to order and transfer Schedule I and II controlled substances.  21 C.F.R. § 1305.03; 21 C.F.R. § 1305.04(a); *see also* DEA MSJ at 2-3.  Thus, the Request seeks  information about only *legal* registrants, not ones subject to law enforcement for drug diversion.  DEA has released information about the identities of those issued DEA Forms 222 in the past.  *See* Exhibit 3 to Professor Hansten's MSJ.

3

Professor Hansten disputes DEA's conclusory statements that disclosure of the requested information would compromise DEA's law enforcement investigations, prosecutions, or guidelines.  As set forth herein and in Professor Hansten's Motion for Summary Judgment, Exemption 7(E) does not allow DEA to withhold the requested information.  Since Professor Hansten's request seeks information about *legally authorized DEA registrants* only, DEA's argument that disclosing basic information about the identities of those registrants might somehow, some day impair law enforcement investigations or prosecutions is simply too vague to be sufficient to invoke Exemption 7(E).

Although DEA has provided neither a *Vaughn* Index describing the withheld information nor a detailed declaration setting out why it believes Exemption 7(E) applies to the requested information, it claims that at least some of the responsive records relate to controlled substances used in lethal injection executions.  Assuming this is true, case law from this District makes it clear that Exemption 7(E) does not encompass the punishment phase of the criminal process, and thus does not apply to records related to the procurement of drugs for lethal injection.  Therefore, DEA must produce those records.

## III.    ARGUMENT

### A.    Defendant's Focus on the Identify of the Requester and the Alleged Purpose of the Request is Inappropriate, Irrelevant, and Runs Counter to Settled Precedent

DEA's focus on Professor Hansten's identity and the supposed purpose of the Request is inappropriate and misplaced.  It is well established that the identity of the person making a FOIA document request is irrelevant.  The Supreme Court has observed that a FOIA requester's identity generally "has no bearing on the merits of his or her FOIA request."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989).  "Because Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest in a

particular document, except in certain cases involving claims of privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request." *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 (1994) (internal citations and quotation marks omitted). *See also NARA v. Favish*, 541 U.S. 157, 170 (2004) ("As a general rule, withholding information under FOIA cannot be predicated on the identity of the requester."); *Lynch v. Dep't of the Treasury*, 210 F.3d 384, at *4 (9th Cir. 2000) (unpublished table opinion) (upholding district court's decision to not consider identity of requester in determining whether records were properly withheld under Exemption 7(A)); *Parsons v. Freedom of Info. Act Officer*, No. 96-4128, 1997 WL 461320, at *1 (6th Cir. Aug. 12, 1997) ("[T]he identity of the requestor is irrelevant to the determination of whether an exemption applies."); *United Techs. Corp. v. FAA*, 102 F.3d 688, 692 (2d Cir. 1996) (rejecting plaintiff's argument that Exemption 4 should be applied "on a requester-specific basis," because "[u]nder that rule, the Government would be required in every FOIA case to conduct an inquiry regarding the identity of the requester and the circumstances surrounding its request," and "[t]he FOIA was not intended to be applied on such an individualized basis"); *Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996) ("Whether [a particular exemption] protects against disclosure to 'any person' is a judgment to be made without regard to the particular requester's identity."); *Durns v. BOP*, 804 F.2d 701, 706 (D.C. Cir. 1986) ("Congress granted the scholar and the scoundrel equal rights of access to agency records."), *cert. granted, judgment vacated on other grounds & remanded*, 486 U.S. 1029 (1988).

In fact, a Court in this District has gone on to explain that "the applicability of Exemption 7(E) bears no relationship to the identity of the FOIA requester." *Mezerhane de Schnapp v. United States Citizenship & Immigr. Servs.*, 67 F. Supp. 3d 95, 102 (D.D.C. 2014). Similarly, the requester's "need or intended use for the documents is irrelevant to his FOIA action." *North v.*

*Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989).  Professor Hansten's personal views and opinions and the supposed purpose of the Request have no bearing on whether DEA is entitled to withhold the requested information from the public.

**B.      DEA Has Not and Cannot Demonstrate that Responsive Documents Are Subject to Exemption 7(E)**

**1.      DEA Has Failed to Describe the Withheld Documents**

"To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both."  *Defenders of Wildlife v. U.S. Border Control*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009).  The agency must "'disclose as much information as possible' in its Vaughn Index."  *Id.* (quoting *Hall v. DOJ*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008)).  DEA cannot withhold all of the information responsive to Professor Hansten's request without at least making known to the Court and Professor Hansten what information it seeks to exclude from production.

DEA claimed, in its denial of Professor Hansten's FOIA request, that it "is not required to conduct a search for the requested records."  Ex. 1 to Prof. Hansten's MSJ , Ex. E.  Although DEA has not provided the Court with a *Vaughn* Index describing the documents or data responsive to Professor Hansten's FOIA request, it is clear that DEA conducted such a search.  Otherwise, DEA could not have described a portion of the responsive data, which it claims pertains to the identity of a supplier of drugs used in lethal injections.

By failing to describe the responsive documents or data in a *Vaughgn* Index, DEA prevents the Court and Professor Hansten from any opportunity to test the appropriateness of its denial. The Declaration filed with DEA's Motion for Summary Judgment provides no more detail about those documents and data than does DEA's brief, which is insufficient.  *See Defenders of Wildlife*, 623

F. Supp. 2d at 88 ("The Vaughn Index and/or accompanying affidavits or declarations must 'provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply.'"  (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (alterations in original))).

> **2.    DEA Incorrectly Claims that Exemption 7(E) "Categorically" Exempts Responsive Documents from Disclosure.**

In its denial of Professor Hansten's FOIA request, DEA claimed that any such documents are "categorically exempt" from disclosure.  *See* DEA MSJ at 2.  DEA rests this claim on *Smith v. BATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).  DEA MSJ at 9-10.  *Smith*, however, does not support DEA's conclusion.

*First*, as DEA acknowledges (DEA MSJ at 10), *Smith* does not state that just because DEA has a law enforcement mission, every record it possesses is "categorically" exempt from disclosure under Exemption 7.  Instead, the *Smith* court made clear that only "*information related to law enforcement techniques*" of the agency is subject to "categorical" protection.  977 F. Supp. at 501 (emphasis added).[2]  Here, DEA has failed to identify any "law enforcement techniques" of the DEA that would be disclosed by the information Professor Hansten requests that would create a basis for relying on Exemption 7(E).  Instead, DEA asserts, without any evidence and by inappropriately relying on the requestor's identity, that the release of the requested information would lead to the disclosure of the identity of sources of controlled substances that could have the

---

[2]    "Exemption 7(E) covers 'techniques and procedures for law enforcement investigations or prosecutions' as well as 'guidelines for law enforcement investigations or prosecutions.'"  *Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)(E)).  Because DEA rested its denial of Professor Hansten's request on this supposed categorical exemption, it relies entirely on the "techniques and procedures" prong of Exemption 7(E).  In any event, DEA makes no claim that the requested information qualifies as a "guideline."

"potential for diversion and harm to physical safety," and "would impair the government's ability to obtain lethal injection substances."  DEA MSJ at 10.  Such potential consequences are unrelated to "law enforcement techniques."  *See Whittaker v. DOJ*, Case No. 18-cv-01434, 2019 WL 2569915, at *1-2 (D.D.C. June 21, 2019) ("The phrase 'techniques and procedures'. . . refers to how law enforcement officials *go about* investigating a crime."  (emphasis in original) (citation omitted). The government's ability to obtain drugs for executions is not only unconnected to "law enforcement techniques" but is more broadly not in any way related to DEA's role and mission. *See* DEA Mission Statement, https://www.dea.gov/about/mission (accessed 11/23/2021, 11:43 am).

*Second*, unlike in *Smith*, DEA has not "provid[ed] the Court with" *any* information for the Court to "decide whether the material is properly withheld under Exemption 7(E)."  977 F. Supp. at 501.

Even in *Smith*, the Court held that the agency's "descriptions of its deletions pursuant to Exemption 7(E) are too conclusory for this Court to determine whether the exemption was properly invoked," 977 F. Supp. at 501.  It continued, "Defendant must provide greater detail as to why the release of the information deleted from the two documents at issue would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public."  *Id.*  Again, DEA provides *no* such "detail as to why the release of the [requested] information . . . would compromise law enforcement *by revealing information about investigatory techniques* that are not widely known to the general public," as required by *Smith*. *Id.* (emphasis added)*.* Accordingly, DEA's claim of "categorical" exemption just because an agency with a law enforcement mission holds that information must fail.

### 3.    DEA Fails to Meet Both the Exemption 7 Threshold Burden and the Specific Requirements of Exemption 7(E)

a.    <u>DEA has not shown that it meets the Exemption 7 threshold.</u>

To determine whether an agency has met the Exemption 7 threshold, the court must find that the requested documents are "records or information compiled for law enforcement purposes." *See Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). "[T]he focus is on how and under what circumstances the requested files were compiled." *Id.* "[T]he District Court must determine whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files." *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 939 (D.C. Cir. 1970).

DEA failed to demonstrate it meets the "two-part test" set out by the D.C. Circuit "whereby the government can show that its records are law enforcement records: the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties[.]" *Benavides v. BOP*, 774 F. Supp. 2d 141, 146 (D.D.C. 2011) (quoting *Jefferson*, 284 F.3d at 177).

To meet this burden, DEA must "identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law." *Summers v. DOJ*, 934 F. Supp. 458, 462 (D.D.C. 1996) (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982)). This is true even if an agency "specializes in law enforcement" because "[t]he court's 'deferential' standard of review is not . . . 'vacuous.'" *Campbell v. DOJ*, 164 F.3d 20, 33 (D.C. Cir. 1998) (quoting *Pratt*, 673 F.2d at 421) (holding that "to justify summary judgment under exemption 7, the FBI must explain why each withheld document or set of closely similar documents relate to a particular law enforcement purpose.").

As set forth herein and in Professor Hansten's Motion for Summary Judgment, DEA does not meet the burden set by this test.  Nowhere does DEA "identify a particular individual or a particular incident as the object of its investigation."  *Summers*, 934 F. Supp. at 462 (quoting *Pratt*, 673 F. 2d at 420).  Without such an identification, DEA's claim that it meets the Exemption 7 threshold necessarily fails.  *See Campbell*, 164 F.3d at 32-33.  Instead of properly identifying a specific person or incident that is the subject of investigation that would be impacted by disclosing the requested information, DEA asserts, without citation, that merely "because DEA is a law enforcement agency, DEA satisfies the threshold standard for invoking Exemption 7."  DEA MSJ at 9.  The D.C. Circuit has made clear that the "contention that [law enforcement agency] records per se meet the threshold criterion of Exemption 7 . . . has been rejected by this Circuit."  *Brick*, 293 F. Supp. 3d at 11 (quoting *Pratt*, 673 F.2d at 414).  Accordingly, DEA's argument that it has met the Exemption 7 threshold fails.

DEA also claims that it meets the Exemption 7 threshold because "[w]hen controlled substance transactions fall outside the closed system of distribution, the activity constitutes diversion, which is a violation of the Controlled Substances Act."  DEA MSJ at 9.  DEA does not claim, however, that the information Professor Hansten requested relates to any such alleged diversion or law violation.  Such vague and generalized speculation is not sufficient to justify the application of Exemption 7(E).  *See Campbell*, 164 F.3d at 32-33.  Similarly, the fact that law enforcement employees maintain the requested records (DEA MSJ at 3) is not controlling about whether Exemption 7(E) should apply.  Courts have found that a law enforcement agency must produce responsive records despite the agency's claim that it maintains the records in the course of its general law enforcement mission.  *See, e.g.*, *Campbell*, 164 F.3d at 32-33 (FBI did not meet

Exemption 7 threshold); *Brick*, 293 F. Supp. 3d at 11-12 (same); *Shapiro v. DOJ*, 37 F. Supp. 3d 7, 28-30 (D.D.C. 2014) (same).

 Finally, Forms 222 are used to monitor the legal transfers of Schedule I & II drugs.  *See* DEA MSJ at 2-3.  Professor Hansten is merely requesting general information about registrants to whom DEA issued Forms 222 on a certain date, not copies of the Forms 222 themselves.  DEA has released information about the identities of those issued DEA Forms 222 in the past. Accordingly, it is apparent that DEA maintains a list of registrants simply to monitor to which registrants DEA provides Forms 222 on a particular date.  Where the agency is "merely engaging in a general monitoring of private individuals' activities," it does not meet the Exemption 7 threshold.  *Jefferson*, 284 F.3d at 177 (quoting *Pratt*, 673 F.2d at 420).

  b. <u>DEA has not met the specific requirements of Exemption 7(E).</u>

 "Exemption 7(E) is properly invoked only for techniques not generally known to the public." *Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 885 (D.D.C. 1    991).  The Exemption will not apply where there is "nothing exceptional or secret about the techniques." *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851, 857 (D.D.C. 1989).  For example, in *Albuquerque Publishing*, the court held that Exemption 7(E) did not apply to "information pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television . . .  includ[ing], it would seem to us, techniques such as eavesdropping, wiretapping, and surreptitious tape recording and photographing."  726 F. Supp. at 858.  Additionally, "the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014).

 Here, DEA has neither identified any non-public law enforcement techniques nor provided *any* explanation of the procedures that it is purportedly protecting.  As a result, DEA fails to meet

the requirements of Exemption 7(E).  *See, e.g.*, *id.* ("Th[e] near-verbatim recitation of the statutory standard is inadequate."); *Nat'l Sec. Archive v. FBI*, 759 F. Supp. at 885 (where "th[e] contentions are too conclusory," Exemption 7(E) requirements not met)); *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. at 857 (Exemption 7(E) requirements not met where "the agency provides the Court with insufficient information about the nature of the techniques").

DEA argues that "[t]he effectiveness of DEA's mission is dependent to a large extent on the use of sensitive collection techniques and methods that are not known to the general public." DEA MSJ at 4.  That may be true in some instances but the information requested here does not relate to DEA techniques unknown to the public. The requirement to request and file Forms 222 is not a "sensitive" technique not know to the general public; it appears in the Code of Federal Regulations.  *See* 21 C.F.R. § 1305 *et seq.*  The request simply seeks a list of DEA registrants issued Forms 222 on a particular date.  It is no secret that DEA maintains lists of DEA registrants and issues DEA Forms 222.  DEA makes it clear to the public on its website that it provides these services.     https://apps.deadiversion.usdoj.gov/webforms2/spring/validationLogin   (accessed 11/22/2021 11:17 am).  The request simply seeks records related to this registration. DEA has not identified any otherwise unknown techniques that would be disclosed if such a list was provided.

DEA also asserts that the disclosure of the information Professor Hansten requested "would provide information to individuals seeking to circumvent the law," claiming that the basic information sought could somehow be an element of a "mosaic analysis" that "may interfere with the lawful distribution and use of controlled substances."  DEA MSJ at 4.  Professor Hansten requested merely a list of DEA registrants who received DEA Forms 222 on a given day.  The possibility that such very general information about legally registered DEA registrants could fit somehow into a "mosaic analysis" strains credulity.  Presumably, any information held by DEA,

or any law enforcement agency, could be combined with other information to develop a "mosaic" of potentially harmful information.  But this would be true of all information held by any federal agency whose activities touch on law enforcement directly or indirectly.  Thus, DEA's argument reveals itself to be nothing less than an effort to exclude all information held by DEA, and potentially all other law enforcement agencies, from disclosure under FOIA.  This cannot be the result when FOIA exemptions must be applied "narrowly."  *Memphis Pub. Co. v. FBI*, 879 F. Supp. 2d 1, 6 (D.D.C. 2012) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

DEA also claims that disclosure of the information covered by Professor Hansten's FOIA request would "interfere with or target . . . persons and businesses ordering and supplying controlled substances for lawful purposes."  *Id.*  DEA provides no basis for that assertion or evidence that it is a realistic concern.  The fact that many known entities such as hospitals, clinics, and pharmacies are authorized to handle controlled substances for lawful purposes is no secret.  In fact, DEA maintains a website permitting entities to look up and validate other registrants' authorization to handle controlled substances.  *See* https://apps.deadiversion.usdoj.gov/webforms2/spring/validationLogin (accessed 11/22/2021 11:17 am).  And, even assuming DEA's claims were true, this argument is not relevant to the criteria needed to establish that a FOIA request falls under Exemption 7(E).  That exemption protects information relating to investigations or prosecutions; what DEA describes is the reported collection of data unrelated to investigations or prosecutions.  As DEA fails to meet the requirements under Exemption 7(E), the agency must produce all information responsive to Professor Hansten's request.

**C.      Even If Responsive Records Relate to Lethal Injection Drugs, Exemption 7(E) Does Not Apply**

DEA spends a large portion of its brief claiming that responsive records would provide data about "a provider of controlled substances used in lethal injections." DEA MSJ at 5. Although, as discussed above, the requester's identity and intended use for the documents are "irrelevant to his FOIA action," *North*, 881 F.2d at 1096, DEA's revelation about some of the requested information makes it even more clear that Exemption 7(E) does not apply to the requested information.

Lethal injection drugs are not in any way related to "law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). Rather, as a Court in this District has recently held, the supply of lethal injection drugs concerns a later phase of the law enforcement process— punishment. *See Citizens for Resp. & Ethics in Washington v. DOJ*, 2021 WL 4502039, at *8 (D.D.C. Sept. 30, 2021) ("[The] procurement of Pentobarbital [a lethal injection drug] to effect a punishment is a distinct phase in the broader scheme of law enforcement. And 'techniques and procedures' for punishment are not mentioned in the statute."). For this reason, the Court held that the government's withholdings under Exemption 7(E), responsive to a FOIA request for "all records . . .  related to the procurement of [certain drugs] . . . to be used in federal executions," were "improper" and consequently ordered disclosure of all records withheld under Exemption 7(E). *Id.* at *1, 8.

Lastly, DEA's assertions that the release of the requested information would make it more difficult for the government to obtain lethal injection drugs and could cause the suppliers of such drugs to be subject to harassment have no bearing on the applicability of Exemption 7(E).[3]

---

[3]      Although irrelevant to the application here of Exemption 7(E), DEA's claims that suppliers of lethal injection drugs face harassment have been contested. *See, e.g.*, FBI Records, https://s3.documentcloud.org/documents/2991824/FBI-FOIA-Apothecary-Shoppe.pdf; BuzzFeed News, *FBI*

Exemption 7(E) applies where "the requested information [would] 'disclose techniques and procedures for law enforcement investigations or prosecutions.'" *Whittaker*, 2019 WL 2569915, at *1 (quoting 5 U.S.C. § 552(b)(7)(E)).  DEA claims Exemption 7(E) protection based on outcomes it predicts might happen if it released information that purportedly relate in some way to lethal injection drugs.  Such predications have nothing to do with "how law enforcement officials *go about* investigating a crime."  *Id.* at *2; *see* p. XX, *supra*.

        **D.**       **DEA's Overly Broad Interpretation of Exemption 7(E) Would Mean that Any Document Held By a Law Enforcement Agency Would Be Entirely Exempt from Disclosure**

DEA proposes a breadth of Exemption 7(E) that is simply untenable—it would swallow *all* documents held by a law enforcement agency.  According to DEA, any "records . . . created and maintained by law enforcement employees in the course of their official duties" would qualify for Exemption 7(E) protection.  DEA MSJ at 3.  Additionally, DEA claims that because "[t]he effectiveness of DEA's mission is dependent to a large extent on the use of sensitive collection techniques and methods that are not known to the general public" (DEA MSJ at 4), it should be able to withhold even documents not clearly related to those techniques and methods.  Not only is such an interpretation illogical, but also, if such were the case, no law enforcement agency would ever produce documents requested under FOIA in reliance on Exemption 7(E).  That is not the law.  *See* Part XX, *supra*.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Professor Hansten respectfully requests that the Court deny DEA's Motion for Summary Judgment.

---

*Documents Don't Back Up Claimed Threat To Execution Drug Supplier* (Aug. 29, 2016), https://www.buzzfeednews.com/article/chrismcdaniel/fbi-documents-dont-back-up-claimed-threat-to-execution-drug.  In any event, DEA's claim has no bearing on either the applicability of FOIA, *see* Part XX, *supra*, or Exemption 7(E).

Dated: November 29, 2021

Respectfully submitted,

*/s/ Daniel C. Schwartz*

Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com
*Attorneys for Plaintiff Prof. Philip Hansten*