IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP HANSTEN,
Plaintiff,
v.

DRUG ENFORCEMENT
ADMINISTRATION,
Defendant.

Case No. 1:21-cv-2043

# PLAINTIFF PROFESSOR HANSTEN'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com

*Attorneys for Plaintiff Professor Philip Hansten*

Dated: December 20, 2021

## **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................................. 1

II. ARGUMENT ............................................................................................................................. 2

        A. DEA Has Failed to Meet Its Burden of Establishing that Exemption 7(E) Applies to the Information Professor Hansten Requested ...................................... 2

        B. DEA's Reliance on a "Mosaic Theory" Is Misplaced ........................................... 3

        C. DEA Failed to Show that the Requested Information Discloses Techniques, Procedures, or Guidelines, Otherwise Unknown to the Public, that Pose a Risk of Circumvention of the Law ......................................................... 6

        D. DEA's Argument Concerning Waiver Is of No Moment ...................................... 8

III. CONCLUSION .......................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
    488 F.3d 178 (3d Cir. 2007)...................................................................................................2

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011)..................................................................................................7

*Boyd v. Criminal Division of DOJ*,
    475 F.3d 381 (D.C. Cir. 2007)................................................................................................1

*Brick v. DOJ*,
    293 F. Supp. 3d 9 (D.D.C. 2017)............................................................................................3

*C.I.A. v. Sims*,
    471 U.S. 159 (1985)................................................................................................................4

*Campbell v. DOJ*,
    164 F.3d 20 (D.C. Cir. 1998)...............................................................................................2, 7

*Citizens for Resp. & Ethics in Washington v. GSA.*,
    No. CV 18-2071 (CKK), 2021 WL 765659 (D.D.C. Feb. 26, 2021) .....................................3

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
    525 F. Supp. 3d 181 (D.D.C. 2021) .......................................................................................4

*CREW v. DOJ*,
    746 F.3d 1082 (D.C. Cir. 2014).............................................................................................8

*Ctr. for Nat. Sec. Stud. v. DOJ*,
    331 F.3d 918 (D.C. Cir. 2003)...............................................................................................4

*Dent v. Exec. Office for U.S. Attys.*,
    926 F. Supp. 2d 257 (D.D.C. 2013).......................................................................................7

*Ecological Rights Found. v. U.S. EPA*,
    No. CV 19-980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) *vacated in
    part on reconsideration*, 2021 WL 2209380 (D.D.C. June 1, 2021).................................. 7-8

*Fams. for Freedom v. U.S. Customs & Border Prot.*,
    837 F. Supp. 2d 287 (S.D.N.Y. 2011)................................................................................5, 6

*Jefferson v. DOJ, Off. of Pro. Resp.*,
    284 F.3d 172 (D.C. Cir. 2002)...............................................................................................2

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ................................................................................................8

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ..............................................................................................6

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) ............................................................................................2, 3

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*,
    330 F. Supp. 3d 373 (D.D.C. 2018) ................................................................................3, 4, 5

*Reps. Comm. for Freedom of the Press v. FBI*,
    No. CV 17-1701 (RC), 2021 WL 2913078 (D.D.C. July 12, 2021) ....................................6, 7

*Shapiro v. DOJ*,
    239 F. Supp. 3d 100 (D.D.C. 2017) ........................................................................................3

*Shapiro v. DOJ*,
    37 F. Supp. 3d 7 (D.D.C. 2014) ..............................................................................................3

*Skinner v. DOJ*,
    893 F. Supp. 2d 109 (D.D.C. 2012), *aff'd*, No. 12-5319, 2013 WL 3367431
    (D.C. Cir. May 31, 2013) ........................................................................................................7

**Statutes**

50 U.S.C. § 3507 ............................................................................................................................4

I.      **PRELIMINARY STATEMENT**

Defendant Drug Enforcement Administration's ("DEA") opposition to Plaintiff Professor Philip Hansten's Motion for Summary Judgment ("Opposition") provides this Court with no basis on which to reject Professor Hansten's Motion for Summary Judgment ("Hansten MSJ").  DEA's repeated reference to the Controlled Substances Act ("CSA") does not successfully buttress its faulty argument that any information it collects is invariably for a "law enforcement purpose" and is therefore exempt from disclosure under the Freedom of Information Act.  Alternatively, faced with the fact that its claim for the categorical application of Exemption 7(E) is unsupported by the law (*see* Professor Hansten's Opposition to DEA's Motion for Summary Judgment ("Hansten Opposition") at 7-8), DEA shifts its focus to a doctrine that is equally inapplicable; it wrongly argues that the "mosaic theory" permits it to withhold the requested information.  That theory has no relevance here.

DEA also devotes a large portion of its Opposition to arguing that Professor Hansten has not established that DEA waived Exemption 7(E) for the requested information.  This is a straw man; Professor Hansten never makes such an argument.  Rather, Professor Hansten argues that, since DEA has released information in response to *similar* requests for Forms 222 data in the past, its claim that records of the sort Professor Hansten requests are *categorically* exempt from disclosure rings hollow—a claim DEA does not refute in its lengthy aside.

Because DEA has failed to meet its burden for both the Exemption 7 threshold and the specific requirements of Exemption 7(E) (*see* Hansten MSJ at 10-16), this Court should grant Professor Hansten's Motion for Summary Judgment.

II.     **ARGUMENT**

    A.     **DEA Has Failed to Meet Its Burden of Establishing that Exemption 7(E) Applies to the Information Professor Hansten Requested**

As an initial matter, DEA has the burden of establishing that it meets the requirements of Exemption 7(E). *Boyd v. Criminal Division of DOJ*, 475 F.3d 381, 385 (D.C. Cir. 2007). *First*, DEA fails to meet this Circuit's threshold test for Exemption 7, which requires the agency to demonstrate that it compiled the requested information for law enforcement purposes. *Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 176 (D.C. Cir. 2002); *Campbell v. DOJ,* 164 F.3d 20, 31 (D.C. Cir. 1998); *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982). In an attempt to meet this threshold, DEA cites to the CSA and incorrectly claims that the requested records were "compiled for law enforcement purposes" because "a Form 222 must be used to legally distribute a controlled substance." Opposition at 8. This position misconstrues the nature of the requested information and disregards the distinction between DEA's regulatory, law enforcement, record-keeping, monitoring, and other duties.

A law enforcement agency may not hide behind a "[s]imple recitation of statutes, orders and public laws" to justify withholding records and contravening FOIA. *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 186 (3d Cir. 2007) (citing *Pratt*, 673 F.2d at 420) (applying the D.C. Circuit "law enforcement purpose" test under Exemption 7). Even where a statute confers enforcement authority on a federal agency, an agency is not relieved of its burden of establishing that the specific documents requested were compiled to investigate a specific violation of the law. *Id.*; *see also Jefferson,* 284 F.3d at 176. DEA has not met this burden.

In fact, the agency concedes that the CSA imposes upon the Government, in addition to a law enforcement purpose, the obligation to *regulate* the *lawful activity* of registered entities. *See* Opposition at 2-4, 8. As Exemption 7 does not apply to records related to an agency's routine monitoring and regulation of lawful conduct, Professor Hansten's request

2

for information merely reflecting licensed entities lawfully issued Forms 222 on a particular date is not covered by Exemption 7.  *See Pratt*, 673 F.2d at 420; *Brick v. DOJ*, 293 F. Supp. 3d 9, 11 (D.D.C. 2017); *Shapiro v. DOJ*, 37 F. Supp. 3d 7, 29 (D.D.C. 2014).

*Second*, DEA fails to meet its burden under the specific requirements of Exemption 7(E).  To meet that burden, DEA must "address what procedures are at stake, and how disclosure of the materials would reveal such procedures." *Citizens for Resp. & Ethics in Washington v. GSA.*, No. CV 18-2071 (CKK), 2021 WL 765659, at *3 (D.D.C. Feb. 26, 2021).  Nowhere in the Opposition does DEA identify a single procedure, technique, or guideline that it seeks to protect.  For that reason alone, it cannot meet its burden.  *See also* Hansten MSJ at 14-16.  Nor should the court award DEA a mulligan to conjure up another rationale for withholding from Professor Hansten information that is rightly due to him.  Exemption 7(E) does not apply to the information Professor Hansten requested; thus, there is no basis for withholding these records.

    B.  **DEA's Reliance on a "Mosaic Theory" Is Misplaced**

In its Opposition to Professor Hansten's Motion for Summary Judgment, DEA relies primarily on a "mosaic theory"[1] to argue that the requested records are exempt from disclosure under Exemption 7(E).  This argument has no application here.

Scant support exists for the application of the mosaic theory to a law enforcement agency's attempt to evade disclosure under FOIA.  *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017).  This is because courts recognize that, unconstrained, "there is little to no limit to [the theory's] scope" as "almost anything a law enforcement agency does could form at least a miniscule piece" of an investigation.  Lest the largely untested theory become a

---

[1] The theory posits that "thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place" to reveal confidential security information.  *Prop. of the People, Inc. v. Off. of Mgmt. & Budget,* 330 F. Supp. 3d 373, 385 n.4 (D.D.C. 2018) (citation omitted.)

"haystack in which to hide" records lawfully subject to FOIA disclosure, the mosaic theory is workable only to the extent that it admits of reasonable limits. *Id.*

Mosaic analysis evolved in the context of national security and counterterrorism concerns, applied more frequently to FOIA Exemption 3, which permits withholding where authorized by federal statute, such as the National Security Act.[2] *See C.I.A. v. Sims*, 471 U.S. 159, (1985) (seminal case applying the mosaic theory to issues related to national security). *See also Ctr. for Nat. Sec. Stud. v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (chronicling application of the theory in the national security context); *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.,* 525 F. Supp. 3d 181, 189 (D.D.C. 2021) (applying mosaic theory to justify exemption from disclosure of the number of Secret Service staff hired to travel with the President abroad).

In recognition of this precedent, the law places a significant and necessary restraint on the mosaic theory by limiting its application to cases raising national security concerns. Courts have been careful to make clear that the deference owed to executive agencies on national security issues does not apply in the typical law enforcement situation. *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 385 n.4 (D.D.C. 2018) (surveying case law and finding no application of mosaic theory outside national security context, and finding application of mosaic theory inappropriate in a case "bear[ing] no connection to national security").

The few cases in which a court has applied the mosaic theory outside the national security context involved an existing, identifiable, complex investigation, and courts have uniformly required that the agency claiming a mosaic-based exemption explain in detail how

---

[2] The Act provides that "the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3507.

discrete "bits of and pieces seemingly innocuous information" could be analyzed to reveal the scope of the investigation in its entirety. *Prop. of the People,* 330 F. Supp. 3d at 385 n.4.

For example, in *Reps. Comm. for Freedom of the Press v. FBI*, a Court in this Circuit upheld withholding FBI records only after finding that divulging an overview of the FBI's undercover investigative technique for a period spanning more than a decade would reveal to "wrongdoers'" information about "how often, where, and when the agency uses the technique." No. CV 17-1701 (RC), 2021 WL 2913078, at *8 (D.D.C. July 12, 2021). As *Reporters Committee* illustrates, mosaic analysis, to the extent that it does apply outside the national security context, is restricted to cases involving potential disclosures that present a reasonable, identifiable risk to an agency's security interests. *Cf. Fams. for Freedom v. U.S. Customs & Border Prot.,* 837 F. Supp. 2d 287, 300 (S.D.N.Y. 2011) (ordering disclosure of historical law enforcement staffing data and highlighting importance of interpreting Exemption 7(E) narrowly).

In the instant case, DEA has not connected its refusal to disclose the information requested by Professor Hansten to an identified national security concern. Nor does DEA allege the existence of a specific, complex, and ongoing investigation, details of which would be disclosed by complying with Professor Hansten's request. Instead, DEA inverts the mosaic analysis, beginning from the "bits of seemingly innocuous information" contained on each Form 222, and merely speculating as to how individuals motivated to violate the law might possibly use this information. Opposition at 9-10 ("Releasing a list of locations where Schedule I and II controlled substances—those substances with the highest potential for abuse—are maintained, would lead to those locations being targeted by criminals . . . ."). This is insufficient on its face; it is nothing more than an effort to invoke the inapplicable "categorical exemption" DEA initially claimed but which it has since largely abandoned. In this case, DEA should not be relieved of its burden to demonstrate a reasonable risk sufficient

5

to justify withholding the information that Professor Hansten has requested. *Fams. for Freedom*, 837 F. Supp. 2d at 300. DEA cannot rely on the mosaic theory to "hide" from its statutorily mandated disclosure to Professor Hansten.

### C. DEA Failed to Show that the Requested Information Discloses Techniques, Procedures, or Guidelines, Otherwise Unknown to the Public, that Pose a Risk of Circumvention of the Law

In addition to its failure to establish that a list of registrants who were issued Forms 222 on a specific date qualifies as a technique, procedure, or guideline, DEA fails to show that the disclosure of the requested information will risk circumvention of the law. To establish the risk of circumvention of FOIA, an agency must show "that a law will be violated or that past violators will escape legal consequences." *Reps. Comm. for Freedom of the Press*, 2021 WL 2913078, at *5 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). DEA has not demonstrated either with respect to the records at issue here.

Instead, DEA relies solely on the Hertel Declaration to support its claim that "diversion is a concern." Opposition at 9. Relying on that Declaration alone, DEA argues that "[r]eleasing a list of locations where Schedule I and II controlled substances—those substances with the highest potential for abuse—are maintained, would lead to those locations being targeted by criminals with the potential for diversion and harm to physical safety." Opposition at 9-10; Hertel Decl. ¶ 18. This argument is not credible. The locations where controlled substances are stored legally, such as hospitals, pharmacies, and doctors' offices, and to which a Form 222 may be issued, are far from a secret known only to DEA. The public may not know whether a particular hospital or pharmacy was issued a Form 222 on the particular date specified in Professor Hansten's FOIA request. That information, however, is not in any way related to the risk of circumvention of the law because the public knows that hospitals and pharmacies almost universally possess controlled substances. Furthermore, the date on which a Form 222 was issued to a particular facility or person does

not reveal when that facility or person actually has controlled substances within its place of business. Thus, DEA fails to explain how disclosure of a list of entities legally issued Forms 222 on a specific date over ten years ago would increase the risk that "a law will be violated" or that "past violators will escape legal consequences." *Reps. Comm. for Freedom of the Press*, 2021 WL 2913078, at *5.

The D.C. Circuit case law on which DEA relies does not help its case, and in fact, supports Professor Hansten's point that DEA has failed to meet the requirements of Exemption 7(E). In the cases cited by DEA, the government agency in question specifically described the investigations and techniques that were threatened. In *Blackwell v. FBI*, for example, the requestor sought "details about procedures used during the forensic examination of a computer" and "methods of data collection, organization and presentation contained in ChoicePoint reports." 646 F.3d 37, 42 (D.C. Cir. 2011). Similarly, in *Skinner v. DOJ.*, the government "not only describe[d] the TECS database in detail, but also explain[ed] the link between disclosure of authorized users' access codes and the many ways individuals could exploit the information to circumvent the law or to corrupt the database itself." 893 F. Supp. 2d 109, 114 (D.D.C. 2012), *aff'd*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013). Unlike the agencies in *Blackwell* and *Skinner*, DEA has not identified any specific investigations or techniques the success of which would be compromised by providing to Professor Hansten the information he requests.

Instead, DEA claims circumvention of the law as a general principle only, making its assertion merely speculative. *See Campbell*, 164 F.3d at 30-32; *see also Dent v. Exec. Office for U.S. Attys.*, 926 F. Supp. 2d 257, 272-73 (D.D.C. 2013) (government did not provide enough information to invoke exemption 7(E) where it relied "on a declaration written in vague terms or in a conclusory manner"); *Ecological Rights Found. v. U.S. EPA*, No. CV 19-980 (BAH), 2021 WL 535725, at *31 (D.D.C. Feb. 13, 2021) ("a barebones justification"

insufficient to show risk of circumvention), *vacated in part on reconsideration*, 2021 WL 2209380 (D.D.C. June 1, 2021).

The Court should reject DEA's attempt to withhold information based on generalized, purely speculative assertions.

### D. DEA's Argument Concerning Waiver Is of No Moment

DEA misapprehends Professor Hansten's argument concerning DEA's prior disclosures of similar information, arguing that because the agency never released the exact information Plaintiff seeks, the Court should not find any waiver. Professor Hansten does not claim, however, that DEA specifically "waived" protection of the information he requested. Rather, Professor Hansten argues that DEA's assertion that "any records responsive to Plaintiff's request were categorically exempt from disclosure," Hertel Decl. ¶ 9, is "controverted" by "contrary evidence in the record" and may constitute "evidence of agency bad faith." *CREW v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

In fact, DEA confirms Professor Hansten's assertion that DEA has both searched for *and* produced information related to DEA Forms 222 on multiple occasions in the past, despite its current claim that such records may never be disclosed. Specifically, DEA admits that it released the exact same type of information—names and addresses of registrants who were issued Forms 222 on specific dates—in response to FOIA requests on at least two separate occasions in the past. *See* Opposition at 18 ("[T]he two FOIA requests for which FOIA requests were granted in part were: "'07/11/2012' (July 11, 2012), etc." for 16-00857-F (page 149) and "'03/07/2014' (March 7, 2014), etc." for 16-00956-F (page 154)."). These disclosures of the exact same type of information that Professor Hansten requests, differing only as to the dates requested, disprove DEA's claim of categorical exemption here.

8

**III.     CONCLUSION**

For the foregoing reasons and those in his Memorandum of Law in Support of his Motion for Summary Judgment and his Opposition to DEA's Motion for Summary Judgment, Professor Hansten respectfully requests that the Court grant his Motion, deny DEA's Motion, and order DEA to produce all documents responsive to his Request.

Dated: December 20, 2021                      Respectfully submitted,

*/s/ Daniel C. Schwartz*
Daniel C. Schwartz (D.C. Bar # 0017749)
Jessica R. Blaemire (D.C. Bar # 1032912)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW
Washington, D.C. 20004
Telephone: 202-508-6000
E-mail: dcschwartz@bclplaw.com
E-mail: jessica.blaemire@bclplaw.com

*Attorneys for Plaintiff Prof. Philip Hansten*