**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| PHILIP HANSTEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2043 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 12 |
| | : | | |
| DRUG ENFORCEMENT | : | | |
| ADMINISTRATION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE**

**I. INTRODUCTION**

This case arises out of a Freedom of Information Act ("FOIA") dispute between Plaintiff

Philip Hansten and Defendant Drug Enforcement Administration ("DEA").  Mr. Hansten asked

the DEA to produce certain information concerning drug purchase order forms ("Form 222s")

that it issued on a single day in 2011.  The DEA refused, claiming that any responsive records

would be categorically exempt under FOIA Exemption 7(E).  But the DEA's position lacks

merit.  For the reasons described below, the Court finds that release of the requested Form 222

information would not reveal any law enforcement technique or procedure.  The Court will

therefore order the DEA to conduct a search and produce all responsive non-exempt information,

and, to the extent that the DEA withholds any responsive information pursuant to FOIA, renew

its motion for summary judgment thereafter.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The DEA is a federal agency whose mission is to enforce the controlled substance laws and regulations of the United States.  Hertel Decl. ¶ 5, ECF No. 12-5.  The DEA administers the Controlled Substances Act, which established a closed system of distribution that allows the DEA to trace drugs from initial manufacture to final dispensing.  *Id.* ¶ 10; 21 U.S.C. § 828. These drugs are classified into five schedules, which are published annually.  Hertel Decl. ¶ 10. The closed system of distribution allows the DEA to prevent, investigate, and prosecute "diversion," or drug transactions that occur outside the system.  Def. Mot. Summ. J. ("Def. MSJ") at 3, ECF No. 12-1.  Under the system, anyone who handles Schedule I or II drugs must register with the DEA.  *See* 28 U.S.C. § 823 (registration requirements).  In addition, to order and transfer such drugs, a registrant must complete a standard purchase order form called Form 222.  Hertel Decl. ¶ 10.  This process begins when a registrant requests a Form 222 from the DEA.  Def.'s Opp'n Pl.'s Mot. Summ. J. ("Def. Opp'n") at 3, ECF No. 14 (citing 21 C.F.R. § 1305.11(b) (2019)).  The DEA then sends a Form 222 to the registrant that contains pre-printed information, as required by regulation, including [1] an order form number bearing the [2] name, [3] address, and [4] registration number of the registrant, [5] the authorized activity, and [6] drug schedules of the registrant.  21 C.F.R. § 1305.11(d) (2019); Hertel Decl. ¶ 10; *see* Ex. 5 to Def. MSJ ("Sample Form 222"), ECF No. 12-8 (entries for "No. of this Order Form"; "Name and Address of Registrant"; "DEA Registration No."; "Registered as a"; and "Schedules").  Once the parties involved in a drug transaction fill out the remaining entries in the Form 222 (such as drug name, code, and package number/size), the DEA stores the completed form in a non-public database for regulatory and investigative use.  Def. MSJ at 4; Hertel Decl. ¶ 16; Sample Form 222 (green copy denoting "DEA Copy 2").

Mr. Hansten is a professor with an academic and professional interest in drug interactions.  Hansten Decl. ¶¶ 1–2, ECF No. 11-3.  On March 10, 2021, he submitted a FOIA request to the DEA seeking "[r]ecords sufficient to show the names, addresses, and business activities of all parties that were issued DEA Form 222s in which the 'Date Issued' on the form is 05/11/2011 (May 11, 2011)."  Ex. A to Hansten Decl. ("Request Letter").  Mr. Hansten received an automatic courtesy reply from the DEA on the same day.  Ex. B to Hansten Decl.  A few weeks later, he contacted the DEA to request a FOIA number and an acknowledgement letter.  Ex. C to Hansten Decl.  The DEA responded with another courtesy reply on April 7, 2021, which provided him a FOIA number but did not provide an estimated timeline for an acknowledgement letter.  Ex. D to Hansten Decl.  Having received no further communication from the DEA, Mr. Hansten filed suit on July 28, 2021.  Compl., ECF No. 1.

A month into this lawsuit, the DEA responded to Mr. Hansten's request, claiming that any responsive records were "categorically exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E)" and therefore it was "not required to conduct a search for the requested records." Ex. E to Hansten Decl. ("Response Letter").  The DEA then filed its answer, and subsequently the parties both moved for summary judgment.  Pl.'s Mot. Summ. J. ("Pl. MSJ"), ECF No. 11; Def. MSJ.  In support of its motion, the DEA submits the declaration of Angela D. Hertel, Unit Chief of the Legal and External Affairs Unit of the DEA.  Hertel Decl. ¶ 1.  The DEA did not submit a *Vaughn* index.

### III.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  It "directs that

'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989). "The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008). Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). An agency may show that it is entitled to summary judgment by submitting affidavits that, in "reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)).

# IV.  ANALYSIS

The DEA's sole basis for claiming a categorical exemption and refusing to search for responsive documents is Exemption 7(E).  This exemption protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  A record must therefore meet three requirements to qualify for withholding pursuant to Exemption 7(E).  *See Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 142 (D.D.C. 2021).  First, it must have been "compiled for law enforcement purposes."  *Id.*  That means that the record was "created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.* ("*PEER*"), 740 F.3d 195, 203 (D.C. Cir. 2014).  Second, the release of the record must disclose techniques, procedures, or guidelines used for law enforcement investigations or prosecutions.  5 U.S.C. § 552(b)(7)(E).  Third, the disclosure of those techniques, procedures, or guidelines "could reasonably be expected to risk circumvention of the law."  *Id.*[1]  In other words, disclosure "might increase the risk 'that a law will be violated or that

---

[1] According to D.C. Circuit caselaw, an Exemption 7(E) claimant must show a risk of circumvention of the law regardless of whether a law enforcement technique, procedure, or guideline is at stake.  *See PEER*, 740 F.3d at 204 n.4 (remarking that, unlike the Second Circuit, the D.C. Circuit has applied the "risk of circumvention" requirement to techniques and procedures in addition to guidelines).  In this case, the DEA contends that release of the Form 222 information would disclose "techniques and procedures."  Response Letter at 1; Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl. Opp'n") at 7 n.2, ECF No. 15.

In addition, the "could reasonably be expected to risk" language supplants the FOIA Improvement Act's general requirement that an agency must disclose records unless it is

past violators will escape legal consequences.'" *PEER*, 740 F.3d at 205 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

### A.  Compiled for Law Enforcement Purposes

Exemption 7(E) first requires that the record was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). An agency whose "principal function is law enforcement" is entitled to deference when it claims that records were compiled for law enforcement purposes. *PEER*, 740 F.3d at 203. Yet this deferential standard of review is not "vacuous." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998) (quoting *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982)). Even a law enforcement agency must establish: (1) "a rational nexus between the investigation and one of the agency's law enforcement duties," and (2) "a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011). A law enforcement purpose can exist "outside the context of a specific investigation." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Here, the DEA's principal function is law enforcement. *See Cooper v. U.S. Dep't of Just.*, No. 99-cv-2513, 2022 WL 602532, at *28 (D.D.C. Mar. 1, 2022); *Deglace v. D.E.A.*, No. 05-cv-2276, 2007 WL 521896, at *2 (D.D.C. Feb. 15, 2007). Thus, the Court views the DEA's representation that Form 222s are compiled for law enforcement purposes in a deferential light. The DEA's mission is "to regulate the distribution of controlled substances for lawful uses." Def. MSJ at 4–5. According to the DEA, Form 222s serve this mission because it is "collected

---

reasonably foreseeable that disclosure would harm the interest the claimed exemption protects. *See Reps. Comm. for Freedom of the Press v. FBI*, 548 F. Supp. 3d 185, 197 & n.2 (D.D.C. 2021); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 525 F. Supp. 3d 181, 192 & n.4 (D.D.C. 2021).

in furtherance of DEA's diversion control enforcement." *Id.* Mr. Hansten, however, points out

that the pre-printed information on Form 222s is supplied by the registrants themselves and

contends that the DEA merely "compiles this information as part of a routine recordkeeping

process." Pl. MSJ at 13 (citing 21 C.F.R. § 1305.11 (2019)). But the DEA has explained that

Form 222 is a "critical tool[]" that allows it "to regulate the distribution of controlled substances

for lawful uses," Def. MSJ at 4–5, and that "information collected from registrants" assists the

"DEA's efforts to track the distribution of controlled substances for particular transactions,"

Hertel Decl. ¶ 16. So, Form 222 enables the DEA to uncover and investigate diversion

"incident[s]" in "violation of federal law." *Blackwell*, 646 F.3d at 40. Given Form 222's

function, the "nexus" between it and the DEA's mission is plainly "rational." *Id.*; *cf.*

*Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 128 (D.D.C. 2018) (finding

DHS's records collection of chemical facilities regulated by law served law enforcement purpose

under Exemption 7 because "[s]teps by law enforcement officers to prevent terrorism surely

fulfill 'law enforcement purposes'" (quotation marks and citation omitted)). Still, Mr. Hansten

argues, if this form of recordkeeping serves a law enforcement purpose, virtually all records of a

law enforcement agency would qualify as serving some law enforcement purpose. Pl. Opp'n at

15. But Mr. Hansten's argument sweeps too broadly, as there is a rational nexus here between

the Form 222s and the DEA's law enforcement function of controlling drug diversion where

there would likely not be with records concerning the procurement of office supplies or

maintenance of fleet vehicles. Accordingly, the DEA has cleared the preliminary hurdle

imposed by Exemption 7(E) by establishing that the requested Form 222 information was

compiled for law enforcement purposes.

**B.  Techniques and Procedures for Law Enforcement Investigations or Prosecutions**

In order to meet Exemption 7(E)'s second requirement, the DEA must show that release

would "disclose techniques and procedures for law enforcement investigations or prosecutions."

5 U.S.C. § 552(b)(7)(E).  "The phrase 'techniques and procedures' . . . refers to how law

enforcement officials *go about* investigating a crime."  *Whittaker v. United States Dep't of Just.*,

No. 18-cv-01434, 2019 WL 2569915, at *2 (D.D.C. June 21, 2019) (emphasis in original)

(quoting *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d

678, 682 (2d Cir. 2010)).  An agency cannot justify an Exemption 7(E) withholding by offering a

"near-verbatim recitation of the statutory standard" that does nothing to explain "what

procedures are at stake" or "how disclosure [of the withheld records] could reveal such

procedures."  *CREW*, 746 F.3d at 1102.  The agency "must at least provide *some* explanation of

what procedures are involved and how they would be disclosed."  *Id.* (emphasis in original).

Furthermore, "[t]he government 'must show that the records contain law-enforcement techniques

and procedures that are generally unknown to the public."  *Elkins v. Fed. Aviation Admin.*, 134 F.

Supp. 3d 1, 4 (D.D.C. 2015) (quoting *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950

F. Supp. 2d 221, 245 (D.D.C. 2013)).  The exemption "does not ordinarily protect 'routine

techniques and procedures already well known to the public,'" but it does "protect 'confidential

details . . . of program[s]' if only their 'general contours [are] publicly known.'"  *Elec. Frontier

Found. v. Dep't of Just.*, 384 F. Supp. 3d 1, 9–10 (D.D.C. 2019) (omission and alterations in

original) (first quoting *Founding Church of Scientology of Wash., D.C. v. NSA*, 610 F.2d 824,

832 n.67 (D.C. Cir. 1979); and then quoting *Sussman*, 494 F.3d at 1112).

Here, the DEA cannot meet Exemption 7(E)'s second requirement.  While the DEA

could use Form 222 in a diversion investigation, the entries on this form say nothing about how

the DEA would "*go about* investigating" a diversion case.  *Whittaker*, 2019 WL 2569915, at *2

(emphasis in original); *see also Transgender L. Ctr. v. ICE*, 33 F.4th 1186, 1199 (9th Cir. 2022) ("'[T]echniques and procedures' cover 'how law enforcement officials go about investigating a crime.'" (citation omitted)); *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019) (same).  The DEA does not dispute that Form 222s are required for every entity seeking to purchase and transfer Schedule I or II drugs.  Pl. MSJ at 2.  Nor does it contest Mr. Hansten's claim that "[t]he majority, if not all of the DEA registrants issued DEA Forms 222 on a specific date are legitimate pharmacies, doctors, and state functions." *Id.* at 14.  Given this context, the DEA has not explained how anything in these standard purchase forms would reveal any "technique" or "procedure" regarding the DEA's diversion enforcement.  *See Webster's Third New International Dictionary* (1986) (defining "technique" as "a technical method of accomplishing a desired aim"; and "procedure" as "a particular way of doing or of going about the accomplishment of something").  Furthermore, Form 222 is not "generally unknown to the public," *Elkins*, 134 F. Supp. 3d at 4, given the fact that Congress mandates its use, 21 U.S.C. § 828(d)(1), and federal regulation specifies the pre-printed information on it.  *See* 21 C.F.R. § 1305.11(d) (2019) ("DEA Forms 222 will have an order form number and be issued with the name, address and registration number of the registrant, the authorized activity, and schedules of the registrant.").  Perhaps the DEA applies specific law enforcement techniques to the information contained in the Form 222s to investigate drug diversion.  But the DEA entirely fails to disclose how the information contained in the form reveals the law enforcement technique itself.  In short, Form 222 reveals nothing about the agency's law enforcement techniques and procedures, and the type of information collected, as well as the fact that it is collected, is already generally known.

Two recent cases in this District help drive this point home.  In *Whittaker v. United States Department of Justice*, the plaintiff sought records of the FBI's background check on him.  No. 18-cv-01434, 2020 WL 6075681, at *1 (D.D.C. Oct. 15, 2020).  The FBI claimed Exemption 7(E) on the basis that the background check would reveal the agency's techniques and procedures.  *Id.* at *2.  It explained in detail that disclosure of the background check would reveal FBI techniques and procedures because based on what information, if any, appeared, a criminal could determine whether the FBI had detected her criminal activity and draw inferences about the FBI's capabilities to detect and deter her crime.  *Id.* at *3.  In ruling for the FBI, the court found that the FBI adequately showed that "disclosing information risks revealing the underlying techniques and procedures used to gather information about a person."  *Id.* at *4.

In *Woodward v. U.S. Marshals Service*, plaintiff sought records pertaining to cell phone tracking technology used by the agency that led to his criminal conviction.  No. 18-cv-1249, 2022 WL 296171, at *1 (D.D.C. Feb. 1, 2022).  The court ruled that because the public was aware of the "general contours" of cell data tracking, the agency could not redact the section of the document merely "indicating its existence."  *Id.* at *6.  The agency was entitled, however, to redact the list of phone numbers it compiled that were associated with the fugitive.  *Id.*  The court reasoned that "[t]he list of specific phone numbers could provide insight on law enforcement investigation techniques," such as "who law enforcement investigated in connection to the Plaintiff for apprehension purposes" and "the numbers that were investigated."  *Id.* (citation omitted).

Unlike the protected information in *Whittaker* and *Woodward*, the requested Form 222 information does not reveal any DEA techniques or procedures.  These Form 222 entries say nothing about how the DEA would "go about" a diversion investigation.  *Whittaker*, 2019 WL

2569915, at *2.  Because every registrant seeking to buy and transfer Schedule I and II drugs

must complete a Form 222, the data on the form would not reveal the DEA's investigative

capabilities (as was the case in *Whittaker*) or who it was investigating (as was the case in

*Woodward*).  In short, the DEA has failed to explain how any technique or procedure can be

divined from a Form 222.

      The DEA, for its part, shifts the Court's attention to the procurement of lethal injection

drugs, claiming that disclosure of Form 222s would jeopardize this system.[2]  According to the

DEA, "any responsive records may reveal the identity of a provider of controlled substances

used in lethal injections" and therefore "impair the government's ability to obtain lethal injection

substances in the future."  Hertel Decl. ¶ 17; Def. MSJ at 10–11.  The Court, however, agrees

with Mr. Hansten that these arguments "have no bearing on the applicability of Exemption 7(E),"

Pl. Opp'n at 14, because Exemption 7(E) only protects disclosures that would reveal "techniques

and procedures *for law enforcement investigations or prosecutions*."  5 U.S.C. § 552(b)(7)(E)

(emphasis added).  As a court in this District explained, records concerning lethal injection are

part of the "punishment phase" of the criminal process, which is distinct from the "investigation

and prosecution phases of the criminal process" under the "plain meaning" of Exemption 7(E).

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 567 F. Supp. 3d 204, 217 (D.D.C.

2021) (rejecting Federal Bureau of Prisons's withholding under Exemption 7(E) of records

---

[2] The DEA initially appeared to justify its withholding based on "Plaintiff's identity" as a death penalty abolitionist and his "purported purpose behind the request," but the agency subsequently clarified that it concurred with Mr. Hansten that these considerations are irrelevant to its withholding.  *See* Def. MSJ at 4–6, 10, 11; Def.'s Reply Support Mot. Summ. J. ("Def. Reply") at 2 n.1, ECF No. 16.  The Court agrees.  *See U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989) ("[T]he identity of the requesting party has no bearing on the merits of his or her FOIA request."); *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989) ("[A party's] need or intended use for the documents is irrelevant to his FOIA action").

concerning procurement of lethal injection drugs). *Citizens*, however, acknowledged that information concerning lethal injection may satisfy Exemption 7's "law enforcement purpose" requirement because "enforcement of the law fairly includes . . . the detection and *punishment* of violations of law." *Id.* at 215 (emphasis in original) (quoting *Mittleman v. Office of Personnel Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996)); *see* 5 U.S.C. § 552(b)(7) (Exemptions 7(A)–(F) each requires showing law enforcement purpose). Thus, once the DEA has searched for and processed the responsive records, perhaps there will be a basis to withhold any lethal injection-related information under another subsection of Exemption 7, but the DEA has failed to establish a basis under Exemption 7(E) on the current record. In conclusion, the DEA has failed to show that disclosure of Form 222 information reveals any law enforcement technique or procedure. Accordingly, it is unnecessary for the Court to examine Exemption 7(E)'s last requirement regarding risk of circumvention.

*          *          *

Within 60 days, the DEA must conduct a search for responsive records and produce to Mr. Hansten any non-exempt portions of such records. To the extent that the DEA withholds any responsive information pursuant to FOIA, it shall renew its motion for summary judgment 30 days thereafter. To move the remaining issues forward in this case, the DEA must clarify a few points.

First, the DEA has not explained precisely what records it claims are exempt from disclosure. The DEA has treated Mr. Hansten's request as a "request for DEA Form 222s." Def. Opp'n at 2. But Mr. Hansten's request is broader: he seeks "*[r]ecords sufficient to show* the names, addresses, and business activities of all parties that were issued DEA Form 222s." Request Letter at 1 (emphasis added). It is true that Form 222 is itself a record bearing this

information.  *See* Hertel Decl. ¶ 10; 21 C.F.R. § 1305.11(d) (2019) (requiring "name, address . . . of the registrant, the authorized activity"); Sample Form 222 (entries for "Name and Address of Registrant" and "Registered as a").  But it remains unclear whether any other records may also supply the requested information.  *See, e.g.*, Hertel Decl. ¶ 10 (mentioning "electronic equivalent" to DEA Form 222).  Accordingly, the DEA must conduct a search for all responsive records.  *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (agency has duty to verify that "all files likely to contain responsive materials (if such records exist) were searched").

Second, in the event the DEA renews its motion for summary judgment, it must clarify *which* Form 222 it possesses.  When the DEA refers to Form 222 in its briefing, is it referring to the *pre-printed* form that the DEA sends to registrants?  *See* Hertel Decl. ¶ 14; Sample Form 222.  Or is it referring to the *completed* form that bears the pre-printed entries in addition to the entries that the parties fill out after a drug transaction?  *See* Def. Reply at 5.  Or does the DEA possess *both* kinds of Form 222s?  Moreover, does the DEA possess an electronic database of Form 222 information submitted electronically that can be searched and from which selective information can be extracted?  All of these distinctions are important because the type of content on a Form 222 will inform the Court's analysis of what, if any, exemptions apply and to which portions they might apply.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 11) is **GRANTED** and Defendant's Motion for Summary Judgment (ECF No. 12) is **DENIED WITHOUT PREJUDICE**.  Within 60 days of this Opinion, the DEA shall: (1) conduct a search for responsive records; and (2) produce to Mr. Hansten any non-exempt portions of such records.

To the extent that the DEA withholds any responsive information pursuant to FOIA, it shall

renew its motion for summary judgment 30 days thereafter.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 22, 2022                                          RUDOLPH CONTRERAS
                                                               United States District Judge